STATE OF NORTH CAROLINA v. TAMMY PEVIA

No. 8116SC903

(Filed 16 March 1982)

1. Narcotics § 1.1— delivery of marijuana—amount transferred—remuneration

The State is not required to show both a transfer of five or more grams of marijuana and receipt of remuneration in order to submit to the jury the offense of delivery of marijuana. G.S. 90-95(a)(1), (b)(2).

2. Narcotics § 4— delivery of marijuana—sufficiency of evidence

The State's evidence was sufficient to support defendant's conviction of delivery of marijuana where it tended to show that an undercover agent gave defendant $20 with which to purchase a $10 bag of marijuana and some amphetamines and that defendant returned to the agent a bag of marijuana, two capsules which she said cost $2 each, and $6, since the transfer of marijuana for remuneration constitutes a delivery in violation of G.S. 90-95(a)(1) regardless of the amount of marijuana transferred, and the State was not required to show that defendant made a profit on the transaction.

3. Narcotics § 4.2— possession of narcotics with intent to sell or deliver—purchase for undercover agent

The State's evidence was sufficient for the jury in a prosecution for possession of marijuana and amphetamines with the intent to sell or deliver where it tended to show that defendant offered to purchase drugs for an undercover agent, drove with the agent to the seller's place of employment,

left the car to meet with the seller, and returned to the car with a bag of marijuana and two amphetamines.

**4. Criminal Law § 7.1; Narcotics § 4.2— purchase of narcotics for undercover agent—no entrapment as matter of law**

In a prosecution for possession and felonious sale or delivery of marijuana and amphetamines, the State's evidence did not show entrapment as a matter of law where it showed that an undercover agent went to defendant's house to arrange for defendant's sister to purchase drugs for her; when the undercover agent learned that defendant's sister was not present, she did not suggest to defendant that defendant make the purchase instead; on her own initiative, defendant suggested that they go to a certain location to buy some drugs; when the agent declined defendant's invitation, defendant insisted that the seller would give her a good count because the seller knew her; and defendant and the undercover agent drove together to the place of employment of the seller where defendant purchased marijuana and amphetamines for the agent.

APPEAL by defendant from *Brewer, Judge.* Judgments entered 24 March 1981 in Superior Court, ROBESON County. Heard in the Court of Appeals 3 February 1982.

Defendant was convicted of possession of marijuana and amphetamines with intent to sell or deliver and felonious sale or delivery of marijuana and amphetamines. Judgments imposing prison sentences were entered.

The State's evidence tends to show the following. Twice, on 18 September 1980, an undercover agent of the Robeson County Sheriff's Department went to a house in Pembroke seeking defendant's sister. The agent had received information that defendant's sister would arrange a drug purchase for her. Each time, defendant told the agent that her sister was not there and suggested where the agent might find her. When the agent returned a third time, defendant invited the agent inside. Defendant was watching television. There were other people also present in the house.

The agent did not ask defendant to purchase drugs for her. On her own initiative, defendant suggested that they go to Dreamland to buy some drugs. The agent thought the person at Dreamland might recognize her so she declined the offer, saying Cynthia would not give her a "good count." Defendant insisted that Cynthia would give a good count because Cynthia knew the defendant.

A companion of the agent drove the agent and defendant to Dreamland. The agent gave defendant $20.00 and asked her to purchase a ten dollar bag of marijuana and some Eskatrols. Ten minutes later, defendant and Cynthia Hammonds emerged from the Dreamland building. It was around 10:00 p.m., and two large lights were on at the corners of the building. The agent saw the two women exchange objects. She saw a dollar bill drop to the ground which Hammonds picked up and eventually gave to the defendant.

Defendant then walked back to the car and handed the agent a clear plastic bag containing what was later identified as marijuana, and two capsules. Defendant said that the capsules had cost $2.00 each. She returned to the agent $6.00.

Defendant presented the following evidence. On the evening of 18 September 1980, Cynthia Hammonds was working at Dreamland. Defendant entered the building and asked her to step outside. When they were outside the building, defendant gave her a ten dollar bill to repay a five dollar loan. Miss Hammonds handed defendant back $5.00. Miss Hammonds did not see any marijuana or amphetamines in defendant's possession.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Kucharski, for the State.*

*Rogers and Bodenheimer, by Hubert N. Rogers III, for defendant appellant.*

VAUGHN, Judge.

Defendant brings forward three assignments of error. None of them discloses prejudicial error.

Defendant first argues that the judge erred in failing to dismiss the charge of sale or delivery of marijuana.

[1]   G.S. 90-95(a)(1) states that it is unlawful for any person "[t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." G.S. 90-95(b) provides:

"(b) Except as provided in subsection (h) and (i) of this section, any person who violates G.S. 90-95(a)(1) with respect to:

. . .

(2) A controlled substance classified in Schedule . . . VI shall be guilty of a felony and shall be sentenced to a term of imprisonment of not more than five years or fined not more than five thousand dollars ($5,000), or both in the discretion of the court, *but the transfer of less than 5 grams of marijuana for no remuneration shall not constitute a delivery in violations of G.S. 90-95(a)(1)."*

G.S. 90-95(b)(2) (1977) (amended 1979) (emphasis added). Citing the italicized portions of the statute, defendant contends that the transfer of five or more grams of marijuana *and* the receipt of remuneration for such transfer are essential elements of delivery of marijuana which the State must prove beyond a reasonable doubt. We disagree.

The offense of delivery under G.S. 90-95(a)(1) is complete when there has been a transfer of a controlled substance. *State v. Dietz*, 289 N.C. 488, 499, 223 S.E. 2d 357, 364 (1976). It is not necessary for the State to prove that defendant received remuneration for the transfer. Neither is the State initially required to prove the quantity transferred.

There is no separate statutory offense entitled delivery of marijuana. G.S. 90-95(b)(2), however, describes a situation limited in its applicability to the delivery of marijuana. If defendant transfers less than five grams of marijuana *and* receives no remuneration, he is not guilty of a delivery in violation of G.S. 90-95(a)(1).

Obviously that portion of G.S. 90-95(b)(2) will not apply to every charge of delivery of marijuana. Based on the statute's wording, if defendant transfers five or more grams of marijuana, he *is* guilty of delivery—despite the absence of remuneration. Likewise, defendant is guilty of delivery if he receives remuneration for the transfer of marijuana—regardless of the amount transferred. We, therefore, conclude that the State does *not* have to show both a transfer of five or more grams of marijuana and receipt of remuneration in order to submit to the jury the offense of delivery.

[2] On a motion for judgment of nonsuit, the court must consider evidence in the light most favorable to the State. *State v. Mad-*

*den,* 292 N.C. 114, 232 S.E. 2d 656 (1977). In the present case, there was no testimony concerning the quantity of marijuana allegedly sold or delivered by defendant. (The marijuana that was seized, however, was introduced into evidence.) The evidence did show, moreover, that the undercover agent gave defendant $20.00 with which to purchase a ten dollar bag of marijuana and some Eskatrols. The defendant returned to the agent a bag of marijuana, two capsules which she said cost $2.00 each, and $6.00.

We conclude there was ample evidence from which a jury could reasonably infer that defendant had transferred marijuana for remuneration. Contrary to defendant's assertions, the State was not required to show that defendant made a profit on the transaction. *See* Annot., 93 A.L.R. 2d 1008 (1964). Since transfer of marijuana for remuneration constitutes a delivery in violation of G.S. 90-95(a)(1)—regardless of the amount transferred—the court properly denied defendant's motion to dismiss. Defendant's assignment of error is overruled.

[3] Defendant next argues that the court erred in denying her motion to dismiss the charge of possession of marijuana and amphetamines with the intent to sell or deliver. Defendant contends that the State's evidence showed that she acted only as an agent. She contends there was no evidence that she had possession of the controlled substances. We disagree.

An accused has possession of a controlled substance within the meaning of G.S. 90-95(a)(1) when he has both the power and the intent to control its disposition or use. *State v. Baxter,* 285 N.C. 735, 208 S.E. 2d 696 (1974); *State v. Keeter,* 42 N.C. App. 642, 257 S.E. 2d 480 (1979). Possession does not require ownership of the controlled substance. Annot., 91 A.L.R. 2d 810 (1963).

Viewing the present evidence in the light most favorable to the State, we conclude the court properly denied defendant's motion to dismiss the charge of possession with intent to sell or deliver. The evidence shows that defendant offered to purchase drugs for an undercover agent, drove with the agent to Dreamland, left the car to meet with Cynthia Hammonds, and returned to the car with a bag of marijuana and two pills.

The fact that defendant acted as a "go-between" is immaterial. *See State v. Davis,* 38 N.C. App. 672, 248 S.E. 2d 883 (1978).

She was aware of the drugs' presence on her person. She had custody and control of the marijuana and amphetamines from the time she met with Miss Hammonds until she returned to the car. She knew that the agent wanted to purchase the controlled substances. A jury could reasonably infer from such evidence that defendant possessed the marijuana and amphetamines with the intent to sell or deliver. Furthermore, evidence that a sale or delivery actually occurred was sufficient evidence for the jury to infer that defendant had possession with the intent to sell or deliver. *State v. Lankford,* 31 N.C. App. 13, 18, 228 S.E. 2d 641, 645 (1976). Defendant's assignment of error is overruled.

[4] Defendant's third assignment of error is the court's denial of her motion to dismiss all charges on the ground that the evidence showed entrapment as a matter of law.

The defense of entrapment requires proof of two essential elements: (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime; and (2) origin of the criminal design in the minds of the government officials rather than in the mind of the innocent defendant. *State v. Grier,* 51 N.C. App. 209, 275 S.E. 2d 560 (1981). The defense is usually a jury question. "The court can find entrapment as a matter of law only where the undisputed testimony and required inferences compel a finding that the defendant was lured by the officers into an action he was not predisposed to take." *State v. Stanley,* 288 N.C. 19, 32, 215 S.E. 2d 589, 597 (1975), *quoting State v. Campbell,* 110 N.H. 238, 241, 265 A. 2d 11, 14 (1970).

In the present cause, defendant offered no evidence on the issue of entrapment. Any finding of entrapment, therefore, must be compelled by the State's evidence. According to the undercover agent's testimony, she originally went to defendant's house with the intent to purchase drugs from defendant's sister. When she learned that defendant's sister was not present, she did not suggest to defendant that she make the purchase instead. Defendant was the one who initially raised the possibility of a drug purchase. Defendant knew exactly where to go and whom to see. When the agent declined defendant's invitation, defendant "insisted that Cynthia would give her a good count because Cynthia knew her."

When an officer does no more than provide the opportunity for defendant to commit an offense, there is no entrapment. *State v. Davis*, 38 N.C. App. 672, 248 S.E. 2d 883 (1978). The present evidence did not compel a finding of entrapment as a matter of law. Defendant's assignment of error is overruled.

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.