STATE OF NORTH CAROLINA v. QUENTIN LAMONT CARR

No. COA00-760

(Filed 7 August 2001)

**1. Evidence— SBI Lab Report—cocaine—motion in limine—notice**

The trial court did not err in a possession of cocaine with intent to sell and deliver and sale of cocaine case by denying defendant's motion in limine and allowing the State to introduce an SBI Lab Report regarding the chemical contents of the substance received from defendant into evidence without further authentication under N.C.G.S. § 90-95(g), because: (1) defense counsel's admission that he had received a copy of the SBI Lab Report, coupled with the contentions of the State's attorney that defendant's former attorney had been sent notice of the State's intention to introduce the report into evidence without further authentication, are sufficient to support the factual finding that defendant received notice under N.C.G.S. § 90-95(g); and (2) having received notice, defendant failed to notify the State at least five days prior to trial that defendant objected to introduction of the report into evidence.

**2. Drugs— possession of cocaine with intent to sell and deliver—sale of cocaine—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charges of possession of cocaine with intent to sell

**STATE v. CARR**

[145 N.C. App. 335 (2001)]

and deliver and the sale of cocaine because the evidence taken in the light most favorable to the State shows that defendant exchanged cocaine for three sweatshirts and a video game.

### 3. Drugs— sale of controlled substance—any transfer in exchange for consideration

The trial court did not commit plain error by instructing the jury that exchanging cocaine for clothing or video games would constitute a sale of a controlled substance under N.C.G.S. § 90-95(a)(1), because the Legislature intended "sale" to encompass any transfer in exchange for consideration, and not just transfers of controlled substances for money.

Appeal by defendant from judgment and commitment entered 6 October 1999 by Judge William H. Freeman in Cabarrus County Superior Court. Heard in the Court of Appeals 16 May 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Donald W. Laton, for the State.*

*Scott C. Robertson, for defendant-appellant.*

CAMPBELL, Judge.

On 14 December 1998 defendant was indicted on one count of felony possession with intent to sell and deliver cocaine and one count of felony sale and delivery of cocaine in violation of N.C. Gen. Stat. § 90-95(a)(1). The trial court's instructions to the jury indicate that it treated the sale and delivery count as two separate offenses. Defendant was tried at the 4 October 1999 Criminal Session of Cabarrus County Superior Court. Defendant was found guilty of possession of cocaine with the intent to sell and deliver, sale of cocaine, and delivery of cocaine. Defendant was sentenced to a minimum of 16 months and a maximum of 20 months imprisonment for the selling cocaine conviction, and a minimum of 10 months and a maximum of 12 months imprisonment for the possession with the intent to sell and deliver conviction. The trial court ordered that these terms be served consecutively. The trial court arrested judgment on the delivery of cocaine conviction.

The State's evidence at trial tended to show that on 21 October 1998 Detective Rodriquez of the Concord Police Department was working as an undercover officer on Operation UC-98, an ongoing investigation to combat street level drug sales in the City of Concord.

STATE v. CARR

[145 N.C. App. 335 (2001)]

On this particular day the officers altered their strategy, deciding to acquire drugs in exchange for shirts and video games, instead of purchasing the drugs through a money transaction. Detective Rodriquez and his partner, a confidential informant, drove down Winecoff Avenue ("Winecoff"), stopping at the house located at 244 Winecoff, a known site of drug activity. Detective Rodriquez approached the window of the house, displayed the video games he was carrying and asked the occupants of the house if they were interested in trading drugs for the video games. Defendant and Robert Ford came out of the house, approached Detective Rodriquez' car, and indicated that they were interested in making a trade. Detective Rodriquez testified that defendant traded three rocks of crack cocaine in exchange for three shirts and a video game. Detective Rodriquez made a separate trade with Robert Ford involving two rocks of crack cocaine. As Detective Rodriquez was leaving 244 Winecoff, he placed the cocaine he had acquired from the two men in separate evidence bags, which were marked and sent to the State Bureau of Investigation ("SBI") for laboratory analysis.

Detective Lentz testified that on 21 October 1998 he gave Detective Rodriquez the money used to purchase the merchandise for that day's drug operation. Detective Lentz also provided Detective Rodriquez with plastic evidence bags and a felt pen to be used to mark the evidence bags. Detective Lentz received the evidence from Detective Rodriquez following the exchange with defendant, filled out an evidence sheet, and submitted the evidence to the Concord Police Department's evidence technician, Gloria Hopkins. On direct examination, Detective Lentz was shown the SBI Lab Report and testified that the report indicated that the substances were cocaine base, Schedule II. Defendant moved to dismiss the charges at the close of the State's evidence. The trial court denied defendant's motion.

Robert Ford testified for the defense that he exchanged cocaine for video games with Detective Rodriquez on 21 October 1998, but that defendant was not involved in any way in exchanging cocaine with Detective Rodriquez. Defendant renewed his motion to dismiss at the close of all the evidence, which was again denied by the trial court.

On appeal, defendant assigns error to (1) the trial court's denial of defendant's motion *in limine*, (2) the trial court's denial of defendant's motions to dismiss for insufficiency of the evidence, and (3) the trial court's jury instructions on the issue of sale of a controlled substance.

I.

**[1]** We begin by addressing defendant's argument related to the issue that arose at the outset of the trial. During jury selection and the State's opening statement, counsel for the State indicated that the witnesses for the State would be Officers Rodriquez and Lentz, and Sergeant Stikeleather of the Concord Police Department. In response, defendant filed a motion *in limine*, seeking to prevent the State's witnesses from making any reference, directly or indirectly, that the items allegedly received from defendant on 21 October 1998 were or looked like cocaine or any derivation thereof, without scientific proof of the chemical contents of the alleged substance. Specifically, defendant argued that the State had not given defendant sufficient notice under N.C. Gen. Stat. § 90-95(g) of its intention to introduce into evidence the SBI Lab Report, which identified the substances allegedly transferred by defendant as cocaine. Defendant further argued that the State had failed to give sufficient notice under N.C. Gen. Stat. § 90-95(g1) of its intention to introduce into evidence the statement establishing the chain of custody of the actual alleged controlled substances. The State argued that appropriate notices had been given to defendant's former attorney. After conducting an evidentiary hearing, the trial court made findings of fact, which included the factual finding that defendant's former attorney had received a copy of the notice of the State's intent to use the SBI Lab Report, as well as a copy of the report itself. Based on its findings of fact, the trial court concluded that the State had complied with N.C.G.S. § 90-95(g). The trial court likewise concluded that the State had complied with N.C.G.S. § 90-95(g1).

We begin by noting that the North Carolina appellate courts have consistently held that rulings on motions *in limine* are not appealable. *State v. Hayes,* 350 N.C. 79, 511 S.E.2d 302 (1999); *Southern Furn. Hdwe., Inc. v. Branch Banking & Tr. Co.,* 136 N.C. App. 695, 526 S.E.2d 197 (2000); *Nunnery v. Baucom,* 135 N.C. App. 556, 521 S.E.2d 479 (1999). In reaffirming this rule in *Hayes,* the Supreme Court stated:

> This Court has consistently held that " '[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial.' " (citations omitted). Rulings on motions *in limine* are preliminary in nature and subject to change at trial, depending on the evidence offered, and "thus an objection to an order granting or denying the motion 'is

insufficient to preserve for appeal the question of the admissibility of the evidence.' " (citations omitted).

*Hayes*, 350 N.C. at 80, 511 S.E.2d at 303. Therefore, we must examine the record to determine whether defendant objected when the evidence that was the subject of defendant's motion *in limine* was offered at trial.

The record indicates that the only objection made by defense counsel was made while Detective Lentz was being questioned about the SBI Lab Report. Defendant's objection was overruled by the trial court, and Detective Lentz proceeded to testify that the SBI Lab Report identified the substances allegedly received from defendant as cocaine base, Schedule II. The SBI Lab Report was then admitted into evidence. Therefore, we examine defendant's argument that the trial court erred in denying his motion *in limine* only as it relates to the admissibility of the SBI Lab Report.

N.C. Gen. Stat. § 90-95(g) establishes a procedure through which the State may introduce into evidence the lab report of the chemical analysis conducted on alleged controlled substances without further authentication. N.C.G.S. § 90-95(g) reads in pertinent part:

(g) Whenever matter is submitted to the North Carolina State Bureau of Investigation Laboratory, the Charlotte, North Carolina, Police Department Laboratory or to the Toxicology Laboratory, Reynolds Health Center, Winston-Salem for chemical analysis to determine if the matter is or contains a controlled substance, the report of that analysis certified to upon a form approved by the Attorney General by the person performing the analysis shall be admissible without further authentication in all proceedings in the district court and superior court divisions of the General Court of Justice as evidence of the identity, nature, and quantity of the matter analyzed. Provided, however, that a report is admissible in a criminal proceeding in the superior court division or in an adjudicatory hearing in juvenile court in the district court division only if:

(1) The State notifies the defendant at least 15 days before trial of its intention to introduce the report into evidence under this subsection and provides a copy of the report to the defendant, and

(2) The defendant fails to notify the State at least five days before trial that the defendant objects to the introduction of the report into evidence.

Nothing in this subsection precludes the right of any party to call any witness or to introduce any evidence supporting or contradicting the evidence contained in the report.

N.C. Gen. Stat. § 90-95(g) (1999).

In the instant case, after holding an evidentiary hearing, the trial court made the following findings of fact:

the Court would find as a fact that the Defendant was originally represented by Attorney Steve Grossman; that when he entered the case in January of 1999, he was given a copy of the file, a copy of the lab report, and a copy of the notice of intent to use the lab report without calling the SBI laboratory personnel; and that since that time Mr. Grossman has been permitted to withdraw from the case and Mr. White now represents the Defendant; that there is no copy of the notice of intent in the file; that Mr. Grossman does not remember whether or not he got the notice of intent but that it was not in his file that he turned over to Mr. White; and that no objection has been made before trial, five days before trial, that the Defendant objects to the introduction of the report; and that Mr. White, who is now the attorney, has not seen the notice of intent.

Based on its findings of fact, the trial court concluded that the State had complied with N.C.G.S. § 90-95(g)(1) and denied defendant's motion *in limine*. The trial court then later allowed the State to introduce the SBI Lab Report into evidence without further authentication.

The record indicates that defense counsel had in fact received a copy of the SBI Lab Report, as required by N.C.G.S. § 90-95(g)(1). However, defense counsel disputed whether defendant's former attorney had received notice of the State's intention to introduce the SBI Lab Report into evidence without further authentication. After conducting the evidentiary hearing, the trial court determined that defendant's former attorney had in fact received a copy of the SBI Lab Report, as well as notice of the State's intention to introduce the report into evidence without further authentication. We believe defense counsel's admission that he had received a copy of the SBI Lab Report itself, coupled with the contentions of the State's attorney that defendant's former attorney had been sent notice of the State's intention to introduce the report into evidence without further authentication pursuant to N.C.G.S. § 90-95(g)(1) and the lack of any specific denial of receipt of this notice by defendant's former attor-

ney, are sufficient to support the trial court's factual finding that defendant received notice under N.C.G.S. § 90-95(g)(1). We stress that this determination is strictly limited to the facts of this case, and had defendant not actually received a copy of the SBI Lab Report itself, we would be faced with a much different situation. Having received notice under N.C.G.S. § 90-95(g)(1), defendant failed to notify the State at least five days prior to trial that defendant objected to introduction of the report into evidence. Thus, the State was permitted to introduce the report into evidence without further authentication pursuant to N.C.G.S. § 90-95(g), and defendant's objection at trial was properly overruled.

## II.

[2] Defendant next contends that the trial court erred in denying his motions to dismiss brought at the close of the State's evidence and at the close of all the evidence. "In ruling on a motion to dismiss, the issue before the trial court is whether substantial evidence of each element of the offense charged has been presented, and that defendant was the perpetrator of the offense." *State v. Carr*, 122 N.C. App. 369, 371-72, 470 S.E.2d 70, 72 (1996). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *State v. Patterson*, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585 (1994). "All the evidence, whether direct or circumstantial, must be considered by the trial court in the light most favorable to the State, with all reasonable inferences to be drawn from the evidence, being drawn in favor of the State." *Carr*, 122 N.C. App. at 372, 470 S.E.2d at 72.

The offense of possession with intent to sell or deliver has the following three elements: (1) possession of a substance; (2) the substance must be a controlled substance; (3) there must be intent to sell or distribute the controlled substance. *See* N.C. Gen. Stat. § 90-95(a)(1); *State v. Fletcher*, 92 N.C. App. 50, 55, 373 S.E.2d 681, 685 (1988); *State v. Casey*, 59 N.C. App. 99, 116, 296 S.E.2d 473, 483-84 (1982). To prove sale and/or delivery of a controlled substance, the State must show a transfer of a controlled substance by either sale or delivery, or both. *State v. Moore*, 327 N.C. 378, 382, 395 S.E.2d 124, 127 (1990).

Taken in the light most favorable to the State, the evidence shows that defendant exchanged cocaine for three sweatshirts and a video game. This evidence is sufficient to withstand defendant's motions to dismiss as to both counts of the indictment.

### III.

**[3]** By his final assignment of error, defendant argues that the trial court committed plain error in instructing the jury that exchanging cocaine for clothing or video games would constitute a sale of a controlled substance. We disagree.

N.C. Gen. Stat. § 90-95(a)(1) makes it unlawful "[t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." N.C.G.S. § 90-95(a)(1) (2000). The intent of the legislature in enacting N.C.G.S. § 90-95(a)(1) was twofold: "(1) to prevent the manufacture of controlled substances, and (2) to prevent the transfer of controlled substances from one person to another." *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985). Pursuant to this legislative intent, the North Carolina Supreme Court has concluded that the language of N.C.G.S. § 90-95(a)(1) creates the following three offenses: "(1) *manufacture* of a controlled substance, (2) *transfer* of a controlled substance by sale or delivery, and (3) *possession with intent to manufacture, sell or deliver* a controlled substance." *Moore*, 327 N.C. at 381, 395 S.E.2d at 126 (emphasis in original). "By phrasing N.C.G.S. § 90-95(a)(1) to make it unlawful to . . . *sell or deliver* . . . the legislature, *solely for the purpose of this statutory subsection*, has made each single transaction involving transfer of a controlled substance one criminal offense, which is committed by either or both of two acts—sale or delivery." *Id.* at 382, 395 S.E.2d at 126-27 (emphasis in original). Therefore, count two of the indictment in the instant case properly charged defendant with *transfer* of a controlled substance by both sale and delivery.[1]

The North Carolina Controlled Substances Act defines " '[d]eliver' or '[d]elivery' " to mean "the actual constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." N.C. Gen. Stat. § 90-87(7) (2000). It is thus apparent that the Legislature intended the crime of transfer of a controlled substance by *delivery* to be complete upon the transfer or attempted transfer from one person to another of a controlled substance, regardless of whether the

---

1. We note that the fact the State included in count two as a single offense both sale and delivery, even though the two acts could have been charged as separate offenses, was not prejudicial to defendant. *See State v. Dietz*, 289 N.C. 488, 223 S.E.2d 357 (1976). The Supreme Court reiterated this rule in *State v. Moore*, 327 N.C. 378, 395 S.E.2d 124 (1990), where it stated that "[a] defendant may be indicted and tried under N.C.G.S. § 90-95(a)(1) in such instances for the transfer of a controlled substance, whether it be by selling the substance, or by delivering the substance, or both." *Moore*, 327 N.C. at 382, 395 S.E.2d at 127.

two persons entered into an exchange of the controlled substance for another item of value, such as money, goods, or services. Consequently, this Court has held that "[t]o prove delivery, the [S]tate is not required 'to prove that defendant received remuneration for the transfer.' " *State v. Thrift*, 78 N.C. App. 199, 201, 336 S.E.2d 861, 862 (1985) (quoting *State v. Pevia*, 56 N.C. App. 384, 387, 289 S.E.2d 135, 137, *cert. denied*, 306 N.C. 391, 294 S.E.2d 218 (1982)).

Unlike the terms "deliver" and "delivery," the term "sale" is not defined under the North Carolina Controlled Substances Act. Therefore, in order to determine the meaning of the term "sale," we must interpret its meaning in the context of the North Carolina Controlled Substances Act. "Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). "When the language of a statute is clear and unambiguous, there is not room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *State v. Jarman*, 140 N.C. App. 198, 205, 535 S.E.2d 875, 880 (2000) (citing *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978)). The plain meaning of "sale" is "a contract transferring the absolute or general ownership of property from one person or corporate body to another for a price (as a sum of money or any other consideration)." Webster's Third New International Dictionary 2003 (1966). Therefore, we hold that the term "sale," in the context of the North Carolina Controlled Substances Act, means the exchange of a controlled substance for money or any other form of consideration. We believe that this interpretation of the term "sale" is consistent with the legislative intent behind N.C.G.S. § 90-95(a)(1) to prevent the manufacture and transfer of controlled substances. Having defined the terms "deliver" and "delivery" to mean the mere transfer or attempted transfer of a controlled substance, we believe the Legislature intended "sale" to encompass any such transfer in exchange for consideration.

We also find support for our interpretation in the statutory meaning given the term "sale" in the context of this State's regulation of alcoholic beverages. Under Chapter 18B of the North Carolina General Statutes, entitled "Regulation of Alcoholic Beverages," the Legislature has defined "sale" to mean "any transfer, trade, exchange, or barter, in any manner or by any means, for consideration." N.C. Gen. Stat. § 18B-101(13) (2000). We cannot believe the Legislature

intended the term "sale" to have a different meaning in these two similar contexts. Therefore, in the context of the Controlled Substances Act, we interpret the term "sale" to include any barter or other exchange of a controlled substance for consideration.

Defendant argues that "[a] sale is a *transfer* of property for a specified price payable in money." *Creason*, 313 N.C. at 129, 326 S.E.2d at 28 (citing *State v. Albarty*, 238 N.C. 130, 76 S.E.2d 381 (1953)). In support of his argument, defendant relies on the Supreme Court's decisions in *Creason* and *Albarty*. While we recognize that the Supreme Court did state in both *Creason* and *Albarty* that a sale was "a transfer of property for a specified price payable in money," we do not feel that the language used by the Supreme Court in those two cases mandates the conclusion that a "sale," in the context of the Controlled Substances Act, encompasses only transfers of controlled substances for money, to the exclusion of transfers for other forms of consideration.

In *Albarty*, the defendant was charged with violating N.C. Gen. Stat. § 14-291.1, which made it a misdemeanor to "sell, barter or cause to be sold or bartered, any ticket, token, certificate, or order for any number or shares in any lottery, . . . ." *Albarty*, 238 N.C. at 132, 76 S.E.2d at 382-83 (quoting N.C. Gen. Stat. § 14-291.1). On appeal, the Supreme Court held that the words "barter" and "sell" were not used as synonyms for the purposes of N.C.G.S. § 14-291.1. The Supreme Court proceeded to define "barter" as "a contract by which parties exchange one commodity for another," and "sale" as "a transfer of goods for a specified price, payable in money." *Id.* While we agree with the Court's decision in *Albarty* and acknowledge its precedential effect on this Court, we do not believe that the distinction drawn in *Albarty* between "barter" and "sale" is relevant in the context of the Controlled Substances Act because the General Assembly did not use the term "barter" in N.C.G.S. § 90-95(a)(1). Therefore, the Court's reasoning in *Albarty* does not compel the conclusion that the term "sale," in the context of the Controlled Substances Act, only encompasses transfers of controlled substances for money.

In *Creason* and *Moore*, two cases dealing with the interpretation of N.C.G.S. § 90-95(a)(1), the Court cited the definition of "sale" set forth in *Albarty*. While both *Creason* and *Moore* deal with the Controlled Substances Act, in neither case was the Court presented with the question of the meaning of the term "sale" in that context. Consequently, we believe that the Court's use in *Creason* and *Moore* of the definition of sale set forth in *Albarty* is dicta and thus not bind-

ing on this Court in its consideration of the issue presented here. *See Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby.").

Having concluded that the term "sale," in the context of the Controlled Substances Act, encompasses barter or any other exchange for consideration, we hold that the trial court's instructions to the jury in the instant case were a correct statement of the law. Thus, defendant's final assignment of error is overruled.

Based on the foregoing reasons, we conclude that defendant received a trial free from prejudicial error.

No error.

Judges WYNN and BIGGS concur.