COLLINS, Judge.
 

 *205
 
 Defendant Tyrone Marcero Chevallier appeals judgments entered upon jury verdicts of guilty of possession of a firearm by a felon, possession with intent to sell a counterfeit controlled substance, attempted sale of a counterfeit controlled substance, and delivery of a counterfeit controlled substance, and upon Defendant's guilty plea of having attained habitual felon status. The charges against Defendant resulted from his participation in a drug transfer which was foiled by police. We find no merit in Defendant's challenges to the trial court's evidentiary rulings or jury instructions.
 

 I. Procedural History and Factual Background
 

 At trial, the State's evidence tended to show the following: Detective Michael Tyndall of the Duplin County Police Department was participating in an undercover sting operation targeting cocaine dealer James Williams. On 29 July 2015, Detective Tyndall, along with a confidential informant, purchased cocaine from Williams at a Bojangles restaurant in Warsaw. A few days later, Detective Tyndall attempted to make a second purchase from Williams, but the deal fell through due to a conflict
 
 *206
 
 between Williams and the confidential informant. As a result, Williams gave Detective Tyndall his cell phone number with instructions to contact him directly in the future. Detective Tyndall contacted Williams directly and set up another purchase of cocaine at the same Bojangles in Warsaw. On 7 August 2015, Detective Tyndall completed a second purchase of cocaine from Williams.
 
 *444
 
 On 20 October 2015, Detective Tyndall called Williams' cell phone to set up a third purchase of cocaine. After a few phone calls back and forth negotiating price, Williams agreed to sell Detective Tyndall one ounce of cocaine for $1,200.00, and instructed Detective Tyndall to call him back when he was ready to complete the exchange. The next day, on 21 October 2015, Detective Tyndall called Williams and they agreed to meet at the same Bojangles restaurant in Warsaw to effectuate the sale. Williams informed Detective Tyndall he was on his way. Detective Tyndall arrived at the Bojangles with $1,200.00 and parked his car to wait for Williams to arrive. A team of hidden officers surveilled the area from nearby.
 

 After waiting about twenty minutes, Detective Tyndall called Williams again; Williams said he was on his way and to keep waiting. Detective Tyndall then heard yelling coming from behind his vehicle. He saw a car with three occupants, including Defendant, had parked behind his vehicle. The men waved Detective Tyndall over to their car. While still on the phone with Williams, Detective Tyndall walked over and told the men he was waiting for Williams. The man sitting in the backseat leaned forward, held up a plastic bag of white powder, and told Detective Tyndall he knew him from previous drug transactions. At that point, Williams told Detective Tyndall, "them are my boys, deal with them" and then hung up the phone.
 

 When Detective Tyndall walked back to the car, Defendant told him to get in and shut the door. Detective Tyndall told him he first needed to get his scale. He retrieved his scale from his vehicle and then returned to the car with the men. Detective Tyndall opened the door, sat down on the edge of the car seat, and placed his scale on the center console in the back of the vehicle. The man holding the plastic bag of white powder placed it on Detective Tyndall's scale. As soon as Detective Tyndall saw that the weight registered one ounce-the amount of cocaine Williams had agreed to sell him for $1,200.00-he signaled the surveilling officers for a takedown. The substance was still on the scale when the men in the car spotted the officers. As the driver of the car started trying to drive away, Detective Tyndall grabbed the white powder off the
 
 *207
 
 scale; however, the backseat passenger ripped the bag out of Detective Tyndall's hands. The car was quickly stopped.
 

 When an arresting officer approached the passenger-side door where Defendant was sitting, he observed that Defendant's hands were low and not visible, so he instructed Defendant to show him his hands. Defendant hesitated but eventually complied. The officer immediately opened the passenger-side door and discovered a long firearm lying upside down on the floor of the vehicle between the seat and door, with its handgrip facing up, right where he had observed Defendant's lowered hand to be. Defendant was arrested and charged with several drug-related offenses as well as possession of a firearm by a felon. A Duplin County Grand Jury indicted Defendant for conspiracy to sell cocaine, conspiracy to deliver cocaine, possession with intent to sell or deliver a counterfeit controlled substance, attempted sale of a counterfeit controlled substance, delivery of a counterfeit controlled substance, and having attained habitual felon status. Defendant was tried by a jury on 27 November 2017. The cocaine-related charges were dismissed at the close of the State's evidence. The jury found Defendant guilty on all remaining charges, and Defendant later pled guilty to having attained habitual felon status.
 

 Defendant was sentenced as a habitual felon. Judgment was entered on the possession of a firearm by a felon conviction, imposing a sentence of 135 to 174 months imprisonment. A consolidated judgment was entered on the attempted sale or delivery of a counterfeit controlled substance convictions, imposing a concurrent sentence of 50 to 72 months imprisonment. Finally, judgment was entered on the possession with intent to sell or deliver a counterfeit controlled substance conviction, imposing a concurrent sentence of 50 to 72 months imprisonment. From the judgments entered upon the jury's guilty verdicts, Defendant appeals.
 

 II. Issues
 

 On appeal, Defendant contends the trial court erred by (1) admitting a hearsay statement under Rule 801(d)(E)'s co-conspirator
 
 *445
 
 exception; (2) denying his motion to dismiss for insufficient evidence of attempted sale of a counterfeit controlled substance; (3) denying his motion to dismiss for insufficient evidence of delivery of a counterfeit controlled substance; and (4) instructing the jury on the theory of "actual" possession for the possession of a firearm by a felon charge.
 

 III. Discussion
 

 *208
 

 A. Co-conspirator Hearsay Exception
 

 Defendant first contends the trial court erred by admitting into evidence Williams' statement "them are my boys, deal with them" under the co-conspirator exception to the rule against hearsay.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 801(d)(E) (2017). He argues Williams' statement was inadmissible under the co-conspirator exception because the State failed to prove a conspiracy existed between Williams and the three men in the car, including Defendant. We disagree.
 

 1. Standard of Review
 

 We review
 
 de novo
 
 a properly preserved objection to the admission of hearsay evidence.
 
 State v. Hicks
 
 ,
 
 243 N.C. App. 628
 
 , 638,
 
 777 S.E.2d 341
 
 , 348 (2015) (citation omitted).
 

 2. Analysis
 

 " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2017). Generally, hearsay is inadmissible.
 
 State v. Valentine
 
 ,
 
 357 N.C. 512
 
 , 515,
 
 591 S.E.2d 846
 
 , 851 (2003) (citation omitted). However, an exception to the general rule against hearsay exists for a statement "offered against a party and ... made by a coconspirator of such party during the course and in furtherance of the conspiracy." N.C. Gen. Stat. § 8C-1, Rule 801(d)(E).
 

 To be admissible under the co-conspirator hearsay exception, the State's evidence must "establish that: '(1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended.' "
 
 Valentine
 
 ,
 
 357 N.C. at 521
 
 ,
 
 591 S.E.2d at 854
 
 (quoting
 
 State v. Lee
 
 ,
 
 277 N.C. 205
 
 , 213,
 
 176 S.E.2d 765
 
 , 769-70 (1970) ). The State must prove "a
 
 prima facie
 
 case of conspiracy, without reliance on the statement at issue."
 
 Valentine
 
 ,
 
 357 N.C. at 521
 
 ,
 
 591 S.E.2d at 854
 
 (citations omitted). "In establishing the
 
 prima facie
 
 case, the State is granted wide latitude, and the evidence is viewed in a light most favorable to the State."
 

 Id.
 

 (citations omitted).
 

 "A criminal conspiracy is an express or implied agreement between two or more persons to do an unlawful act. ..."
 
 State v. Barnes
 
 ,
 
 345 N.C. 184
 
 , 216,
 
 481 S.E.2d 44
 
 , 61 (1997) (citation omitted).
 

 In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual,
 
 *209
 
 implied understanding will suffice. Nor is it necessary that the unlawful act be completed. As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed.
 

 State v. Morgan
 
 ,
 
 329 N.C. 654
 
 , 658,
 
 406 S.E.2d 833
 
 , 835 (1991) (internal quotation marks and citations omitted). Stated differently, although "[t]he State's burden of proof is to produce evidence sufficient to permit the jury to find the existence of a conspiracy, ... [it need not] produce evidence sufficient to compel the jury to find a conspiracy."
 
 State v. Williams
 
 ,
 
 345 N.C. 137
 
 , 142,
 
 478 S.E.2d 782
 
 , 784-85 (1996) (citations omitted).
 

 Here, Detective Tyndall testified he had on three prior occasions planned buys of cocaine from Williams. The two successful transactions occurred at the Bojangles restaurant in Warsaw, and Williams had personally delivered the cocaine to Detective Tyndall in exchange for cash. On 20 October 2015, Detective Tyndall contacted Williams for a third purchase, and Williams agreed to sell Detective Tyndall one ounce of cocaine for $1,200.00. On 21 October 2015, Williams agreed to meet Detective Tyndall at the same Bojangles in Warsaw to effectuate this third buy. When Detective Tyndall arrived at the prearranged meeting place and Williams failed to show, he called Williams on the phone. Detective Tyndall was talking to Williams when he was met by three men who
 
 *446
 
 had parked behind Detective Tyndall's vehicle. They waved him over to their car.
 

 The man in the back seat displayed a plastic bag of white powder. After Detective Tyndall told the men he was waiting for Williams, the man holding the powder told Detective Tyndall he knew him from prior drug transactions, and Detective Tyndall was instructed to get in the car and shut the door. Detective Tyndall told the men he needed to get his scale, retrieved the scale, opened the backseat door, and sat down in the car with the three men, who all appeared to be looking around and fidgeting nervously. The man holding the bag of white powder placed it on Detective Tyndall's scale, which registered the exact weight of cocaine Williams had agreed to sell Detective Tyndall for $1,200.00 the day prior.
 

 Based upon our review of this evidence in the light most favorable to the State, we conclude the State satisfied its burden of establishing a
 
 prima facie
 
 case of conspiracy between Williams and the three men, including Defendant. Williams' statement, "them are my boys, deal with them," made in furtherance of the objective to transfer Detective Tyndall an unlawful substance, merely provided further support for the showing
 
 *210
 
 of the conspiracy. Thus, the trial court did not err in admitting the challenged statement under Rule 801(d)(E) 's co-conspirator exception.
 

 Despite conceding that Williams "may have ... told his people in the car to bring cocaine[,]" Defendant primarily argues that because the men instead brought counterfeit cocaine, there was no "agreement or union of wills" between Williams and the men, and thus "no conspiracy." We disagree.
 

 Defendant fails to supply controlling legal authority to support this argument.
 
 See
 
 N.C. R. App. P. 28(b)(6). Moreover, it is irrelevant whether the unlawful substance the men brought to effectuate Williams' planned drug transaction with Detective Tyndall was actual cocaine, proscribed by
 
 N.C. Gen. Stat. § 90-95
 
 (a)(1) (2017), or counterfeit cocaine, proscribed by
 
 N.C. Gen. Stat. § 90-95
 
 (a)(2) (2017). The State's evidence here was sufficient to establish a
 
 prima facie
 
 case of conspiracy by way of an agreement between Williams and the men to "do an unlawful act,"
 
 Barnes
 
 , 345 N.C. at 216,
 
 481 S.E.2d at
 
 61 -that is, to transfer an unlawful substance by sale or delivery to Detective Tyndall in violation of
 
 N.C. Gen. Stat. § 90-95
 
 (a).
 
 Cf.
 

 Valentine
 
 ,
 
 357 N.C. at 522
 
 ,
 
 591 S.E.2d at 855
 
 ("In finding the existence of a criminal conspiracy, jurors are allowed to make the logical inference that 'one who conspires to bring about a result intends the accomplishment of that result, or of
 
 anything
 

 which naturally flows from its attempted accomplishment
 
 .' " (quoting
 
 State v. Small
 
 ,
 
 301 N.C. 407
 
 , 419,
 
 272 S.E.2d 128
 
 , 136 (1980) )).
 

 Accordingly, we overrule Defendant's argument.
 

 B. Attempted Sale or Delivery of a Counterfeit Controlled Substance Charges
 

 Defendant next contends the trial court erred by denying his motions to dismiss for insufficient evidence the charges of attempted sale of a counterfeit controlled substance and delivery of a counterfeit controlled substance.
 

 1. Standard of Review
 

 We review
 
 de novo
 
 a trial court's denial of a motion to dismiss a criminal charge for insufficient evidence.
 
 See
 

 State v. Crockett
 
 ,
 
 368 N.C. 717
 
 , 720,
 
 782 S.E.2d 878
 
 , 881 (2016) (citation omitted). The scope of judicial review is "whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator."
 
 State v. Chekanow
 
 ,
 
 370 N.C. 488
 
 , 492,
 
 809 S.E.2d 546
 
 , 549 (2018) (citation omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion."
 

 Id.
 

 (citation
 
 *211
 
 omitted). In determining whether substantial evidence was adduced to withstand a motion to dismiss, we "consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 

 Id.
 

 at 492
 
 ,
 
 809 S.E.2d at 549-50
 
 (citation omitted).
 
 *447
 

 2. Analysis
 

 It is unlawful for a person "[t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a counterfeit controlled substance."
 
 N.C. Gen. Stat. § 90-95
 
 (a)(2). This statute establishes three separate offenses: "(1)
 
 manufacture
 
 of a [counterfeit] controlled substance, (2)
 
 transfer
 
 of a [counterfeit] controlled substance by sale or delivery, and (3)
 
 possession with intent to manufacture, sell or deliver
 
 a [counterfeit] controlled substance."
 
 State v. Moore
 
 ,
 
 327 N.C. 378
 
 , 381,
 
 395 S.E.2d 124
 
 , 126 (1990) (interpreting
 
 N.C. Gen. Stat. § 90-95
 
 (a)(1)
 
 [1]
 
 ). "To prove sale and/or delivery of a [counterfeit] controlled substance, the State must show a transfer of a [counterfeit] controlled substance by either sale or delivery, or both."
 
 State v. Carr
 
 ,
 
 145 N.C. App. 335
 
 , 341,
 
 549 S.E.2d 897
 
 , 901 (2001) (citing
 
 Moore
 
 ,
 
 327 N.C. at 382
 
 ,
 
 395 S.E.2d at
 
 127 ).
 

 Our Supreme Court has defined a "sale" in this context as "a
 
 transfer
 
 of property for a specified price payable in money."
 
 Moore
 
 ,
 
 327 N.C. at 382
 
 ,
 
 395 S.E.2d at 127
 
 (quoting
 
 State v. Creason
 
 ,
 
 313 N.C. 122
 
 , 129,
 
 326 S.E.2d 24
 
 , 28 (1985) ). An attempted sale in this context requires the intent to sell and an overt act done for that purpose which goes beyond mere preparation, but which falls short of the completed sale.
 
 See
 

 State v. Melton
 
 , --- N.C. ----, ----,
 
 821 S.E.2d 424
 
 , 428 (2018) (citations omitted). Our Controlled Substances Act defines " '[d]eliver' or 'delivery' " as "the actual[,] constructive, or attempted transfer from one person to another of a controlled substance. ..."
 
 N.C. Gen. Stat. § 90-87
 
 (7) (2017).
 

 The State proceeded upon the principle of acting in concert in an attempt to prove Defendant acted in concert with Williams and the two other men in the car in the commission of the attempted sale or delivery of a counterfeit controlled substance. Under the doctrine of acting in concert, when two or more persons act together in pursuance of a common plan or purpose, each is guilty of any crime committed by any other
 
 *212
 
 in pursuance of the common plan or purpose.
 
 State v. Barts
 
 ,
 
 316 N.C. 666
 
 , 688,
 
 343 S.E.2d 828
 
 , 843 (1986) (citations omitted).
 

 Here, Detective Tyndall testified he had twice before purchased cocaine from Williams at the Bojangles restaurant in Warsaw and contacted Williams again on 20 October 2015 for a third purchase. Williams, after negotiations, agreed to sell Detective Tyndall one ounce of cocaine for $1,200.00 the next day at the same Bojangles in Warsaw where the two prior buys occurred. On 21 October 2015, when Detective Tyndall arrived at the prearranged meeting place expecting to meet up with Williams, after about twenty or thirty minutes three men in an unknown car parked behind Detective Tyndall's vehicle. The three men yelled to Detective Tyndall and waved him over to their car, as one displayed a plastic bag containing white powder.
 

 While Detective Tyndall was speaking on the phone with Williams attempting figure out his whereabouts to effectuate the planned buy, Detective Tyndall told the men in the car he was waiting for Williams, and Williams stated, "them are my boys, deal with them" and then hung up. When Detective Tyndall reengaged the men, the one holding the plastic bag of white powder stated he knew Detective Tyndall from prior drug transactions, and Defendant instructed Detective Tyndall to enter the car and close the door.
 

 After Detective Tyndall informed the men he needed to get his scale, Detective Tyndall retrieved a scale from his vehicle and returned, partially entering the men's car. The man holding the substance placed it on Detective Tyndall's scale, and its weight registered one ounce, the amount of cocaine Williams agreed to sell Detective Tyndall for $1,200.00. Detective Tyndall then immediately signaled the takedown, and police intervention prevented the men from actually delivering the substance to Detective Tyndall, or Detective Tyndall from actually delivering
 
 *448
 
 the money to the men. The white powder was later determined not to be a controlled substance but counterfeit cocaine.
 

 Viewing this evidence and all reasonable inferences therefrom in the light most favorable to the State, including Williams' and the other men's acts performed in furtherance of effectuating the transaction, we conclude the State presented sufficient evidence of transferring a counterfeit controlled substance under both the attempted sale and delivery theories of transfer.
 
 See
 

 State v. Squires
 
 ,
 
 357 N.C. 529
 
 , 535,
 
 591 S.E.2d 837
 
 , 841 (2003) (holding defendant's "possess[ing] the drugs and scales while attempting to effectuate the sale [were] sufficient to establish both intent and an act in preparation of an actual transfer of cocaine" and
 
 *213
 
 thus "sufficient to satisfy the elements of attempted sale of cocaine");
 
 State v. Beam
 
 ,
 
 201 N.C. App. 643
 
 , 648,
 
 688 S.E.2d 40
 
 , 44 (2010) (holding sufficient evidence existed to sustain a charge of unlawful transfer of a controlled substance by delivery where, after planning a drug transaction with an undercover officer posing as a buyer, the defendant got out of her vehicle, went to the trunk, and retrieved the drugs; "re-entered the vehicle, took the drugs out of her purse, and told [the undercover officer] to put the money on the dashboard of her vehicle"; but was arrested before handing the undercover officer the drugs). Defendant's argument is overruled.
 

 However, "[t]he transfer by sale or delivery of a [counterfeit] controlled substance is one statutory offense, the gravamen of the offense being the transfer of the drug."
 
 Moore
 
 ,
 
 327 N.C. at 383
 
 ,
 
 395 S.E.2d at 127
 
 . A violation of
 
 N.C. Gen. Stat. § 90-95
 
 (a)(2) arising from a "single transaction involving transfer of a [counterfeit] controlled substance" constitutes "one criminal offense, which is either committed by either or both of two acts-sale or delivery."
 

 Id.
 

 at 382
 
 ,
 
 395 S.E.2d at 126-27
 
 . Thus, while "[a] defendant may be indicted and tried under N.C.G.S. § 90-95(a) ( [2] ) in such instances for the transfer of a [counterfeit] controlled substance, whether it be by selling the substance, or by delivering the substance, or both[,]"
 
 id.
 
 at 382,
 
 395 S.E.2d at 127
 
 , "a defendant may not[ ] ... be convicted under N.C.G.S. § 90-95(a) ( [2] ) of both the sale
 
 and
 
 the delivery of a [counterfeit] controlled substance arising from a single transfer[,]"
 

 id.
 

 Here, Defendant was permissibly separately indicted and tried for transfer of a counterfeit controlled substance by both attempted sale and delivery arising from a single transaction. As concluded above, substantial evidence was presented to support both theories of transfer, and the trial court properly denied Defendant's motions to dismiss the attempted sale and delivery charges for insufficient evidence. However, the acts of attempted sale and delivery underlying both charges arose from a single transaction of the same counterfeit controlled substance. Accordingly, the jury in this case was improperly allowed to convict Defendant of two offenses-attempted sale and delivery-arising from a single transfer.
 
 Moore
 
 ,
 
 327 N.C. at 383
 
 ,
 
 395 S.E.2d at 127
 
 .
 

 Defendant failed to raise or argue on appeal the improper conviction of two offenses arising from a single transfer. Thus, it is not before us. However, the failure to raise this issue does not preclude Defendant from filing a motion for appropriate relief in the trial court pursuant to N.C. Gen. Stat. § 15A-1415 (2017), does not preclude the trial court from considering a motion for appropriate relief
 
 sua sponte
 
 under
 
 *214
 
 N.C. Gen. Stat. § 15A-1420(d) (2017), and does not prevent the parties to this action from entering into an agreement for appropriate relief under N.C. Gen. Stat. § 15A-1420(e) (2017).
 

 C. Jury Instructions on Actual Possession of a Firearm
 

 Defendant next asserts the trial court erred when charging the jury on possession of a firearm by a felon. Over Defendant's objection that insufficient evidence was presented to support an instruction on the criminal liability theory of "actual" firearm possession, the trial court charged the jury on both "actual" and "constructive" possession theories. On appeal, Defendant again argues the evidence was insufficient to support an instruction on "actual" firearm possession. We disagree.
 

 *449
 

 1. Standard of Review
 

 We review
 
 de novo
 
 properly preserved sufficiency-of-the-evidence challenges to jury instructions.
 
 State v. Osorio
 
 ,
 
 196 N.C. App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009) (citations omitted).
 

 2. Analysis
 

 The trial court must "fully instruct the jury on all substantial and essential features of the case embraced within the issue and arising on the evidence."
 
 State v. Harris
 
 ,
 
 306 N.C. 724
 
 , 727,
 
 295 S.E.2d 391
 
 , 393 (1982) (citation omitted). However, it is error for the trial court "to charge on matters which materially affect the issues when they are not supported by the evidence."
 
 State v. Malachi
 
 , --- N.C. ----, ----,
 
 821 S.E.2d 407
 
 , 416 (2018) (quotation marks and citation omitted). In determining whether the trial evidence adduced was sufficient to instruct on a particular theory of criminal liability, we review the evidence and any reasonable inference from that evidence in the light most favorable to the State.
 
 Cf.
 

 State v. Anthony
 
 ,
 
 354 N.C. 372
 
 , 425,
 
 555 S.E.2d 557
 
 , 591 (2001) ("The evidence presented in this case, when considered in a light most favorable to the State, was sufficient to warrant the trial court's instruction on flight."). An instruction on a criminal liability theory is proper when "there is some evidence in the record reasonably supporting the theory. ..."
 
 State v. Taylor
 
 ,
 
 362 N.C. 514
 
 , 540,
 
 669 S.E.2d 239
 
 , 261 (2008) (quotation marks and citation omitted). Additionally, "challenges to jury instructions allowing juries to convict criminal defendants on the basis of legal theories that lack evidentiary support are ... subject to harmless error analysis. ..."
 
 Malachi
 
 , --- N.C. at ----, 821 S.E.2d at 422.
 

 The State must prove two elements to establish the crime of possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm.
 

 *215
 

 N.C. Gen. Stat. § 14-415.1
 
 (2017). Possession may be actual or constructive.
 
 Malachi
 
 , --- N.C. at ----, 821 S.E.2d at 416 (citation omitted). "Actual possession requires that a party have physical or personal custody of the item."
 
 Id.
 
 (quotation marks and citation omitted). "[A]ctual possession may be proven by circumstantial evidence ...."
 
 State v. McNeil
 
 ,
 
 359 N.C. 800
 
 , 813,
 
 617 S.E.2d 271
 
 , 279 (2005). Constructive possession exists when the defendant, "while not having actual possession, ... has the intent and capability to maintain control and dominion over" the firearm.
 
 State v. Beaver
 
 ,
 
 317 N.C. 643
 
 , 648,
 
 346 S.E.2d 476
 
 , 480 (1986) (citations omitted).
 

 When viewing the evidence adduced in the light most favorable to the State, we conclude it was sufficient to support an instruction on the theory of actual possession of a firearm. Detective Tyndall testified that he observed Defendant "fidgeting and looking around, nervous, acting as if he was the lookout over the vehicle." Officer Miller testified that when approaching the men's vehicle to effectuate the arrest, he observed Defendant sitting in the front passenger seat and "[a]t that point in time his hands were low" and not visible, so Officer Miller "told [Defendant] to get his hands where [he] could see them." Although Defendant eventually complied, "[h]e was slow to show [Officer Miller] his hands." Immediately thereafter, Officer Miller opened the front passenger door where defendant was sitting and observed a "weapon in between the seat ... and the passenger[-]side door, right where [Defendant's] right hand was." Officer Miller later explained:
 

 At that point in time is when I told him, let me see your hands, let me see your hands. I couldn't see his hands. I don't know what he's doing. He finally put his hands up where I could see them.
 

 At that point in time I opened this door. When I opened the door, this is the first thing I saw was that weapon laying right there, right beside him, right beside his right hand, where it was.
 

 Additionally, the State admitted into evidence without objection a picture of the firearm as it was found in the vehicle. That image depicts a long rife lying on the floor of the vehicle between the passenger-side seat and door, with its handgrip facing up, precisely where Officer Miller testified Defendant's hand was lowered and could hold the firearm's handgrip. Although the firearm was
 
 *450
 
 not found on Defendant's person, when viewing this evidence in the light most favorable to the State, we conclude the evidence was sufficient to show Defendant had "personal custody" of the firearm and thus was sufficient to support the trial court's
 
 *216
 
 instruction on the theory of actual possession of a firearm.
 
 See
 

 McNeil
 
 ,
 
 359 N.C. at 813
 
 ,
 
 617 S.E.2d at 279
 
 (concluding evidence was "sufficient to support a jury finding of actual possession" when an officer observed the defendant "repeatedly go 'over the top of a chair with his arm' " while resisting arrest; that he again "observed [the] defendant's arm 'go' over the armchair" after he was handcuffed; and that the defendant later admitted 'the [twenty-two individually wrapped rocks of crack cocaine found in the armchair] was his").
 

 Even presuming,
 
 arguendo
 
 , this evidence was insufficient to support an instruction on actual possession, Defendant could not establish prejudice-that is, a reasonable possibility that, had the court omitted the actual possession instruction, a different result would have been reached at trial.
 
 See
 

 State v. Lee
 
 ,
 
 370 N.C. 671
 
 , 676,
 
 811 S.E.2d 563
 
 , 567 (2018) (citation omitted).
 

 At trial, Defendant conceded the "constructive possession should go to the jury instructions" but objected to the instruction on actual possession. On appeal, although Defendant recites the showing required to support an instruction for constructive possession, he does not seriously dispute the sufficiency of evidence to support it, instead primarily arguing that "the evidence presented at trial did not support a theory of actual possession." To support his showing of prejudice, Defendant argues that instructing on both actual and constructive possession theories "likely created confusion on the part of the jury, which sent a note out asking to see the photograph that showed the firearm in the car." Defendant alleges that the jury's note to the trial court evidences the jury's confusion concerning the theories of possession. We disagree and conclude that the jury's note, standing alone, does not establish prejudice.
 
 See
 

 Malachi
 
 , --- N.C. at ----, 821 S.E.2d at 422 (reasoning in part that the fact that the jury asked for further instructions concerning the possession issue did not tend to show prejudice, given the absence of any explanation for why the jury might have sought clarification of the meaning of possession).
 

 Given the strong, undisputed, and credible evidence of Defendant's possession of a firearm based upon a constructive-firearm-possession theory, even if the trial court erred by also instructing on actual possession, Defendant has failed to satisfy his burden of demonstrating prejudice.
 
 See
 

 id.
 
 at ----, 821 S.E.2d at 421 ("[I]n the event that the State presents exceedingly strong evidence of defendant's guilt on the basis of a theory that has sufficient support and the State's evidence is neither in dispute nor subject to serious credibility-related questions, it is unlikely
 
 *217
 
 that a reasonable jury would elect to convict the defendant on the basis of an unsupported legal theory." (footnote omitted)). Defendant's argument is overruled.
 

 IV. Conclusion
 

 We find no merit in Defendant's challenges to the trial court's evidentiary rulings or jury instructions.
 

 NO ERROR.
 

 Judges TYSON and ZACHARY concur.
 

 [1]
 

 The statutory language of subsection (a)(1) interpreted in
 
 Moore
 
 mirrors that of subsection (a)(2) save only for the unlawful substance identified.
 
 Compare
 

 N.C. Gen. Stat. § 90-95
 
 (a)(1) (identifying a "controlled substance"),
 
 with
 

 id.
 

 § 90-95(a)(2) (identifying a "counterfeit controlled substance").