STATE OF NORTH CAROLINA v. ARTIVES JEROD FREEMAN

No. COA09-774

(Filed 2 March 2010)

1. Homicide— felony murder—attempted drug sale—not covered by Uniform Commercial Code

Although remanded on other grounds, the trial court did not err by denying defendant's motion to dismiss a charge of first-degree murder on a felony murder theory where defendant was trying to collect money for the delivery of cocaine when he shot and killed the victim. Although defendant argued that the sale was governed by the Uniform Commercial Code and was therefore completed before the shooting, under North Carolina con-

trolled substances statutes and cases, the sale was not complete because payment was never made. Defendant was therefore engaged in the attempted sale of cocaine at the time of the shooting and there was no break in the chain of events from the attempted sale to the killing.

**2. Homicide— felony murder—indictment—short-form**

Although remanded on other grounds, the trial court did not err by instructing the jury on felony murder on a short-form indictment.

**3. Criminal Law— impasse between defendant and counsel— use of peremptory challenge**

The trial court erred by allowing defense counsel to make the final decision about use of a peremptory challenge when defendant and defense counsel disagreed. When defendant is denied his fundamental right to exercise the full number of his peremptory challenges, the defendant is entitled to a new trial.

Appeal by defendant from judgments entered 2 September 2008 by Judge Albert Diaz in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 November 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Edwin W. Welch, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for defendant-appellant.*

STEELMAN, Judge.

Where defendant was attempting to collect money due for the delivery of cocaine at the time he shot and killed the victim, the trial court did not err in submitting the murder charge to the jury on the theory of felony murder. The short-form murder indictment alleging first-degree murder put defendant on notice of a possible felony murder theory. Where defendant and his trial counsel had reached an absolute impasse on whether to exercise a peremptory challenge as to a juror, it was error for the trial court to allow counsel to override defendant's wishes, and defendant is entitled to a new trial.

## I. Factual and Procedural Background

On 8 April 2006 and 10 April 2006, Jason Baker (Baker) or Artives Jerod Freeman (defendant) sold crack cocaine to Latahnya Berry

(Berry). On 17 April 2006, Baker telephoned Berry and told her that he was on the way over to her apartment to collect the thirty dollars owed for the two previous cocaine transactions, and there would be trouble if she did not have the money. Baker and defendant subsequently arrived at Berry's apartment. Berry did not have the money. Baker or defendant threatened to "shoot your house up" if Berry did not have the money in half an hour. As Baker and defendant began to leave the apartment, defendant turned around and fired several shots at Berry. Two bullets struck her, resulting in her death. Defendant shot Berry because "I felt like they was playing with our money and we wasn't gonna get paid."

Defendant was indicted on the charges of possession of a firearm by a felon and murder. The murder charge was submitted to the jury on first-degree murder based upon premeditation and deliberation, and felony murder based upon the attempted sale of a controlled substance and discharging a firearm into occupied property. The lesser-included offense of second-degree murder was also submitted to the jury. The jury found defendant guilty of first-degree murder based upon felony murder, which was based upon the attempted sale of a controlled substance. Defendant was also found guilty of possession of a firearm by a felon. The trial court entered concurrent active sentences of life imprisonment for first-degree murder and 16-20 months for possession of a firearm by a felon.

Defendant appeals.

## II.  Motion to Dismiss

**[1]** Although we are remanding this case for a new trial as set forth in section IV of this opinion, the issues raised in this assignment of error will undoubtedly be raised at a new trial. We therefore address this argument. *State v. Lloyd*, 354 N.C. 76, 128, 552 S.E.2d 596, 631 (2001); *State v. Nobles*, 350 N.C. 483, 516, 515 S.E.2d 885, 905 (1999).

Defendant contends that the trial court erred in not dismissing the charges at the close of the State's evidence and at the close of all the evidence. The principal argument made by defendant is that the trial court improperly submitted felony murder to the jury based upon the attempted sale of a controlled substance. We disagree.

We first note that defendant presented evidence before the jury, and thereby waived appellate review of his motion to dismiss at the close of the State's evidence. *State v. Smith*, 320 N.C. 404, 407, 358 S.E.2d 329, 331 (1987). Our review is limited to the denial of defend-

ant's motion to dismiss at the close of all the evidence. *Id.* at 408, 358 S.E.2d at 331.

The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo. State v. Bagley,* 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). The question for this Court is "whether substantial evidence of each element of the offense charged has been presented, and that defendant was the perpetrator of the offense." *State v. Carr,* 145 N.C. App. 335, 341, 549 S.E.2d 897, 901 (2001) (citation omitted). "Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). In considering the motion, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in favor of the State. *State v. Squires,* 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003), *cert. denied,* 541 U.S. 1088, 159 L. Ed. 2d 252 (2004). "Contradictions and discrepancies must be resolved in favor of the State, and the defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Bullard,* 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984) (citations omitted).

First-degree murder under the theory of felony murder is a killing "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C. Gen. Stat. § 14-17 (2007). No proof of premeditation or deliberation is required. *State. v. Wright,* 282 N.C. 364, 369, 192 S.E.2d 818, 822 (1972). The sale or attempted sale of a controlled substance qualifies as an underlying felony for the purposes of N.C. Gen. Stat. § 14-17 if a deadly weapon is used in its commission. *See Squires,* 357 N.C. at 534-36, 591 S.E.2d at 840-42. "A murder occurs during the 'perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.' " *State v. Mann,* 355 N.C. 294, 304, 560 S.E.2d 776, 783 (quoting *State v.· Trull,* 349 N.C. 428, 449, 509 S.E.2d 178, 192 (1998), *cert. denied,* 528 U.S. 835, 145 L. Ed. 2d 80 (1999)), *cert. denied,* 537 U.S. 1005, 154 L. Ed. 2d 403 (2002).

Defendant makes the creative argument that the sale of cocaine by Baker to Berry is governed by the provisions of the Uniform Commercial Code under N.C. Gen. Stat. §§ 25-2-106 and 25-2-401. Defendant argues that under N.C. Gen. Stat. § 25-2-401(2), a "sale" is

complete upon delivery of the goods, and therefore, the sale of cocaine to Berry was completed prior to the time of the shooting. The sale, distribution, manufacture, possession, and transport of controlled substances in North Carolina is governed by the North Carolina Controlled Substances Act (Article 5 of Chapter 90 of the General Statutes) and not by the Uniform Commercial Code.

N.C. Gen. Stat. § 90-95 provides that it is "unlawful for any person: (1) to manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." N.C. Gen. Stat. § 90-95(a) (2007). The terms "sell" and "deliver" are not synonymous, and " 'the *sale* of narcotics and the *delivery* of narcotics are separate offenses' " under N.C. Gen. Stat. § 90-95(a)(1). *State v. Moore*, 327 N.C. 378, 382, 395 S.E.2d 124, 127 (1990) (quoting *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985)). A sale of a controlled substance is a "*transfer* of property for a specified price payable in money." *Creason*, 313 N.C. at 129, 326 S.E.2d at 28 (emphasis in original). A delivery of a controlled substance is the "actual, constructive, or attempted *transfer* from one person to another of a controlled substance." N.C. Gen. Stat. § 90-87(7) (2007) (emphasis added). Thus, as interpreted by our Supreme Court in *Creason* and *Moore*, the distinction between delivery and sale of a controlled substance under the Controlled Substances Act is the payment for the controlled substance. Payment can be either in cash or in kind. *Carr*, 145 N.C. App. at 344, 549 S.E.2d at 902-03. As applied to the facts of the instant case, the sale was not complete because payment for the crack cocaine was never made. This is true even though the delivery of the crack cocaine took place approximately one week prior to defendant's efforts to collect the sales price that resulted in Berry's death. Defendant's actions on 17 April 2006 constituted an attempt to complete the transaction of the sale of cocaine.

Taken in the light most favorable to the State, there was substantial evidence showing that defendant was engaged in the attempted sale of cocaine at the time of the shooting. Defendant admitted that he was at Berry's apartment for the purpose of collecting money due for the cocaine. Defendant was armed with a .25 caliber handgun, which he used to shoot the victim. There was no break in the chain of events leading from the attempted sale to the killing of the victim. Defendant began shooting before he left the room in which the victim was located. The trial court did not err in submitting the issue of felony murder with the underlying felony of attempted sale of cocaine to the jury. This argument is without merit.

### III. Notice of Charges

**[2]** We address this argument because the issue will undoubtedly be raised at a new trial. Defendant contends that the trial court erred in instructing the jury on felony murder based upon the attempted sale of cocaine when defendant did not have notice that the State would be proceeding on the theory of felony murder. We disagree.

Short-form murder indictments are sufficient to charge first-degree murder on the basis of any theory set forth in N.C. Gen. Stat. § 14-17, including felony murder. *State v. Hall*, 187 N.C. App. 308, 323, 653 S.E.2d 200, 211 (2007) (citing *State v. Garcia*, 358 N.C. 382, 388, 597 S.E.2d 724, 731-32 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005)). "When first-degree murder is charged, the State is not required to elect between theories of prosecution prior to trial. Moreover, when the factual basis for prosecution is sufficiently pled, 'a defendant must be prepared to defend against any and all legal theories which [the] facts may support.'" *Garcia*, 358 N.C. at 389, 597 S.E.2d at 732 (quoting *State v. Holden*, 321 N.C. 125, 135, 362 S.E.2d 513, 522 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988)) (internal citations omitted). This argument is without merit.

### IV. Right to Make Final Decisions

**[3]** Defendant argues that the trial court erred by allowing defense counsel to make the final decision regarding the use of a peremptory challenge when defendant and defense counsel disagreed over the striking of a juror. We agree and remand this case for a new trial.

Tactical decisions in trial, "such as which witnesses to call, 'whether and how to conduct cross examinations, what jurors to accept or strike, and what trial motions to make are ultimately the province of the lawyer . . . .'" *State v. Ali*, 329 N.C. 394, 404, 407 S.E.2d 183, 189 (1991) (quoting *State v. Luker*, 65 N.C. App. 644, 649, 310 S.E.2d 63, 66 (1983), *rev'd on other grounds by*, 311 N.C. 301, 316 S.E.2d 309 (1984)).

> However, when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, *the client's wishes must control*; this rule is in accord with the principal-agent nature of the attorney-client relationship. In such situations, however, defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached.

*Id.* (emphasis added).

In the instant case, defendant was fully informed, and he and his counsel reached an absolute impasse regarding whether to accept or strike Juror L.H. Defendant had been removed from the courtroom for misconduct and was watching jury selection on a video feed. Defendant's counsel consulted with defendant during a recess after examining Juror L.H. After consulting with defendant, counsel made "a record of the circumstances, the advice given to the defendant, the reasons for the advice, the defendant's decision, and the conclusion reached." *State v. White*, 349 N.C. 535, 567, 508 S.E.2d 253, 273 (1998) (citing *Ali*, 329 N.C. at 404, 407 S.E.2d at 189), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). Defense counsel stated to the court:

> Your Honor, we have a bit of an issue, that I told Mr. Freeman that I suggested that we accept this juror, that he says he wants to strike her. I told him that that's against my legal advice just because I generally don't like using my last strike when we don't know who else we're going to get, especially when we do have a large pool and we don't know who we're going to get.

Defendant's counsel informed the court that defendant wished to be heard on this matter. The court denied defendant's request to be heard saying, "I don't see how that's my issue. You consult with your client and you decide how to proceed. I can't decide that for you . . ." and "Well, you're his lawyer. I'm not going to hear from him." Defense counsel then proceeded to accept the juror, contrary to his client's express wishes. It was error for the trial court to allow counsel's decision to control when an absolute impasse was reached on this tactical decision, and the matter had been brought to the trial court's attention.

The denial of defendant's *Ali* right to make tactical decisions regarding the use of peremptory challenges is analogous to the erroneous denial of a peremptory challenge. " 'The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused . . . .' " *State v. Locklear*, 145 N.C. App. 447, 451, 551 S.E.2d 196, 198 (2001) (quoting *State v. Freeman*, 314 N.C. 432, 438, 333 S.E.2d 743, 747 (1985)). When a defendant is denied his fundamental right to exercise the full number of his peremptory challenges, the defendant is entitled to a new trial. *Id.*; *see also State v. Hightower*, 331 N.C. 636, 641, 417 S.E.2d 237, 240 (1992) (depriving defendant of right to peremptory challenge warrants a new trial). Here, defendant attempted to exercise his right to challenge Juror L.H. Defendant was denied the oppor-

tunity to exercise his peremptory challenge in violation of *Ali.* Defendant is entitled to a new trial.

NEW TRIAL.

Judges McGEE and STEPHENS concur.