STATE OF NORTH CAROLINA v. RANSOM MARTIN JONES

No. COA11-1330

(Filed 1 May 2012)

**1. Indigent Defendants—instructions to attorney—defer to defendant's wishes—theory unsupported by fact or law—no instruction required**

The trial court did not err in a murder case by failing to instruct appointed defense counsel pursuant to *State v. Ali*, 329 N.C. 394, to comply with his client's wishes. The decision on whether to present theories of misconduct and conspiracy that had no basis in fact was clearly distinguishable from the tactical decision at issue in *Ali* (whether to use a peremptory challenge to strike a juror). Because nothing in our case law requires counsel to present theories unsupported in fact or law, the trial court did not err in failing to instruct counsel to defer to defendant's wishes.

**2. Constitutional Law—waiver of counsel—trial court's advice not erroneous—compliance with statutory requirements**

Defendant's waiver of his constitutional right to counsel was not invalid in a murder case. The trial court did not erroneously advise defendant about his rights pursuant to *State v. Ali*, 329 N.C. 394, and the court fully complied with the requirements of N.C.G.S. § 15A-1242 in accepting defendant's waiver of counsel.

Appeal by Defendant from judgment entered 10 February 2011 by Judge Kenneth F. Crow in Carteret County Superior Court. Heard in the Court of Appeals 3 April 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Sandra Wallace-Smith, for the State.*

*Paul M. Green for Defendant.*

STEPHENS, Judge.

*Factual and Procedural Background*

On 10 February 2011, a jury found Defendant Ransom Martin Jones guilty of second-degree murder in the 2006 death of Sarah Slaton. This conviction followed unusually tangled legal proceedings in the trial court, which began in November 2006 when Defendant was arrested and charged with first-degree murder. Between his 2006 arrest and eventual conviction in 2011, Defendant had three attorneys serve as both his appointed counsel and as standby counsel during several periods when Defendant waived counsel and proceeded *pro se*.

Richard T. McNeil was appointed counsel for Defendant in November 2006 after Defendant's arrest. At a July 2009 pretrial motions hearing, Defendant moved the court to allow him to waive the assistance of counsel and represent himself in all proceedings. Defendant's motion was granted, and McNeil was appointed standby counsel. In August 2009, with Defendant appearing *pro se*, the case was tried to a jury and resulted in a mistrial.

At a motions hearing on 12 January 2010, Defendant asserted that he wished to represent himself at his retrial. McNeil was again appointed standby counsel. At a February 2010 hearing, McNeil was removed as standby counsel due to a medical issue. On 9 March 2010, the trial court issued an order substituting Walter Paramore as standby counsel for Defendant. On 16 March 2010, Defendant requested that Paramore serve as his attorney of record instead of standby counsel, and the trial court entered an order assigning Paramore as Defendant's attorney of record for his retrial.

On 16 June 2010, however, Defendant submitted a *pro se* motion to disqualify Paramore as his attorney. Following a hearing, the trial court made findings of fact that "[D]efendant requested that Paramore be removed for . . . not pursuing claims (prosecutorial, law enforcement, and defense attorney misconduct) that [D]efendant

thinks relevant and germane to his defense." In addition, the court found that Paramore informed the court he would not pursue Defendant's suggested claims because the claims had no merit. Paramore asserted that he was ethically precluded from pursuing such frivolous claims. As a result, the court concluded that Paramore's ability to effectively represent Defendant was substantially impaired, and on 21 June 2010, issued an order removing Paramore as Defendant's attorney. William Gerrans was subsequently appointed as Defendant's new counsel. On 14 July 2010, Gerrans filed a motion to be appointed standby counsel for Defendant on the basis of a conflict between Gerrans and Defendant (regarding Defendant's requests for Gerrans to present theories of misconduct in his defense of Defendant).

At a hearing on 17 November 2010, Defendant again expressed his desire to represent himself and signed a written waiver of counsel. The court ordered a competency examination and thereafter deemed Defendant competent to stand trial by order filed 3 December 2010. Defendant, acting *pro se*, was convicted of second-degree murder on 10 February 2011 and sentenced to 300 to 369 months in prison.

## Standard of Review

This Court reviews alleged violations of constitutional rights *de novo*. *State v. Tate*, 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007). "Under the *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. Williams*, ____ N.C. App. ____, ____, 702 S.E.2d 233, 236 (2010) (citations and quotation marks omitted).

## Failure of Counsel to Comply with Defendant's Wishes

[1] Defendant first argues that the trial court erred in failing to engage Defendant in a colloquy pursuant to *State v. Ali*, 329 N.C. 394, 402, 407 S.E.2d 183, 189 (1991), and instruct appointed defense counsel to comply with his client's wishes. We disagree.

Defendant presents arguments regarding his representation by McNeil. However, because McNeil was ultimately removed as Defendant's counsel for reasons that were *unrelated to the disagreement between Defendant and his counsel*, we need not consider any alleged violation regarding McNeil's representation of Defendant. Therefore, only Defendant's representation by Paramore and Gerrans is relevant on appeal.

Defendant contends that the trial court erred in failing to instruct his appointed counsel to defer to Defendant's own wishes regarding trial strategy and his defense. Defendant wished for both Paramore and Gerrans to present a theory of police, prosecutorial, and defense attorney misconduct and conspiracy in his defense. Defendant relies on *Ali*, in which "the defendant claim[ed] the trial court denied him his right to assistance of counsel by allowing him, rather than his lawyers, to make the final decision regarding whether [a particular person] would be seated as a juror." 329 N.C. at 402, 407 S.E.2d at 189. In holding that the defendant had not been denied his right to counsel, our Supreme Court noted that "[t]he attorney is bound to comply with her client's *lawful* instructions, and her actions are restricted to the scope of the authority conferred." *Id.* at 403, 407 S.E.2d at 189 (citation and quotation marks omitted) (emphasis added).

> [T]actical decisions, such as which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, and what trial motions to make are ultimately the province of the lawyer. However, when counsel and a fully informed criminal defendant client reach an absolute impasse *as to such tactical decisions*, the client's wishes must control; this rule is in accord with the principal-agent nature of the attorney-client relationship.

*Id.* at 404, 407 S.E.2d at 189 (citations and quotation marks omitted) (emphasis added).

Here, there exists an entirely different situation than that presented in *Ali*, where the defendant and his counsel disagreed about *tactical* decisions. Defendant in this case sought to have his attorneys follow instructions to present claims that they felt "ha[d] no merit." Thus, the impasse was not over "tactical decisions," but rather over whether Defendant could compel his counsel to file frivolous motions and assert theories that lacked any basis in fact. Nothing in *Ali* or our Sixth Amendment jurisprudence requires an attorney to comply with a client's request to assert frivolous or unsupported claims. In fact, to do so would be a violation of an attorney's professional ethics: "A lawyer *shall not* bring or defend a proceeding, or assert or controvert an issue therein, *unless* there is a *basis in law or fact* for doing so that is *not frivolous* . . ." N.C. St. B. Rev. R. Prof. Conduct 3.1 (emphasis added).

Indeed, it is to their credit that Paramore and Gerrans both recognized that complying with Defendant's requests would have vio-

lated their duties as officers of the court. In the motion to be appointed standby counsel, Gerrans stated that

> Defendant is convinced that prior counsel Richard McNeil and Private Investigator Jerry Waller somehow conspired with Prosecutor Ann Kirby and the Morehead City Police Department to "frame" the Defendant. Mr. Gerrans is certain that neither Mr. McNeil, Mr. Waller, nor Ms. Kirby did anything improper. Counsel is ethically and professionally obligated to act in compliance with the law.

Defendant had the same disagreements regarding trial strategy with Paramore, whose response was substantially the same. In its order removing Paramore, the trial court stated: "Paramore candidly informed the court that he will not pursue [D]efendant's suggested claims because [] Paramore contends that said claims have no merit and that [] Paramore is ethically precluded from pursuing such claims."

In sum, the decision in this case (whether to present theories of misconduct and conspiracy that have no basis in fact) is clearly distinguishable from the tactical decision at issue in *Ali* (whether to use a peremptory challenge to strike a juror). Because nothing in our case law requires counsel to present theories unsupported in fact or law, the trial court did not err in failing to instruct counsel to defer to Defendant's wishes. This argument is overruled.

### Waiver of Counsel

[2] Defendant's second argument on appeal is that the waiver of his constitutional right to counsel was invalid because the trial court "misadvised" Defendant regarding his right to compel defense counsel to comply with Defendant's wishes where they were at an impasse. As discussed *supra*, the trial court did not erroneously advise Defendant about his rights pursuant to *Ali* (*Ali* being inapplicable to Defendant's disagreement with his appointed trial counsel), and thus Defendant's argument regarding the validity of his waiver based on *Ali* must fail.

Although Defendant does not present any argument that his waiver was invalid beyond that premised on the alleged violation of the principles established by *Ali*, in an abundance of caution, we consider whether the trial court complied with the requirements for accepting a waiver of counsel as provided in section 15A-1242 of the North Carolina General Statutes:

A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:

(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

(2) Understands and appreciates the consequences of this decision; and

(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242 (2011).

At the 17 November 2010 hearing, after determining that Defendant was competent to go to trial, the trial court engaged in the following colloquy with Defendant:

The Court: We're not going to talk about the facts of your case here but I do need to make some findings here. First of all, are you thinking clearly this morning?

[Defendant]: Yes, sir.

The Court: Have you taken any medication or consumed any substance that would impair your judgment in any way?

[Defendant]: No, sir.

The Court: Do you feel okay today?

[Defendant]: Yes, sir.

The Court: All right. Bill Gerrans now represents you. He is your attorney; do you understand that?

[Defendant]: Yes, sir.

The Court: He's indicated to me that once again you've confirmed to him that you wish to have him withdrawn and that he just serve as what's called Standby Counsel and that you be allowed to represent yourself; did you hear Mr. Gerrans say that?

[Defendant]: Yes, sir.

**STATE v. JONES**

[220 N.C. App. 392 (2012)]

The Court: Do you wish to represent yourself, Ransome?[1]

[Defendant]: Yes, sir.

The Court: Are you sure about that?

[Defendant]: Yes, sir.

The Court: Now once again, we've talked about this several times and I believe you understand that the Court is of the opinion that, that would be a mistake; is that true?

[Defendant]: Yes, sir.

The Court: And you understand that Mr. Gerrans is of the opinion that, that would be a mistake. Do you understand that to be the case?

[Defendant]: Yes, sir.

The Court: You also understand, and I believe the Court has told you before, that regardless of what the Court thinks about it and regardless of what Mr. Gerrans thinks about it, it's important as to what you think about it. Do you understand that?

[Defendant]: Yes, sir.

The Court: And that I will not impose my judgment on you if I'm satisfied that you're making an informed decision that you have the capacity to do that. Do you understand that?

[Defendant]: Yes, sir.

The Court: Now, you understand that if you are convicted of first-degree murder that the Court has no choice but to punish you by way of a sentence of the rest of your life in prison; do you understand that?

[Defendant]: Yes, sir.

The Court: And you also understand that the first trial resulted in a hung jury?

---

1. Earlier in the hearing, the trial judge had noted that he and Defendant had encountered each other in various legal proceedings over many years, and the judge subsequently began referring to Defendant by his first name. In addition, Defendant's name is spelled "Ransome" in the hearing transcript, but appears on the conviction and judgment as "Ransom."

[Defendant]: Yes, sir.

The Court: Okay. And do you understand that the district attorney might have the benefit of using whatever transpired at the first trial to tweak or hone the way he presents evidence in this next coming trial. Do you understand that?

[Defendant]: Yes, sir.

The Court: Do you have any questions of the Court, Ransome? Is there anything that you want to say other than you just want to represent yourself because if you would like to make a statement or make a presentation or showing to the Court I'm going to listen to anything that you have to say.

[Defendant]: Nothing right now, Your Honor, except that I would just like Mr. Gerrans to talk about the motions that he's filed.

The Court: So before the Court rules on your motion to withdraw Mr. Gerrans and represent yourself, you want him to prosecute the motions on your behalf?

[Defendant]: Yes, sir.

The Court: I understand that. Here's the deal though and I probably am going to allow that.

[Defendant]: Yes, sir.

The Court: But if we get to the point where the Court subsequently withdraws Mr. Gerrans and puts him as standby counsel, what we can't do, Ransome, is like during the trial go back and forth between Mr. Gerrans representing you and Mr. Gerrans not representing you. We can't jump in and out of those particular status because Mr. Gerrans is either going to be your attorney or he's just going to be there to be of counsel to you in the event that you wish to ask him a question. Does that make sense to you?

[Defendant]: Yes, sir.

The Court: By way of illustration, if the Court withdraws Mr. Gerrans and has him as standby counsel, he'll be there during the trial. If you have a question during jury selection you can reach over and ask Mr. Gerrans a question or whisper to him and he'll whisper to you and he might give you his thoughts on

the matter or give you some advice as to what to do. But ultimately when the Court makes a decision, the Court will be looking for you to make a statement as opposed to Mr. Gerrans.

If it comes to opening statements or examination of witnesses or decisions as to whether or not to testify, you can call upon Mr. Gerrans during the course of the trial and ask upon him for his advice but ultimately it will be up to you to decide whether or not to make an opening statement, a closing argument, what questions to ask a witness, whether or not to testify. Do you understand all of that?

[Defendant]: Yes, sir.

The Court: All right. Do you have any questions about any of that?

[Defendant]: No, sir.

At the conclusion of the hearing, the court stated:

The Court is satisfied that Mr. Jones understands the nature and consequences of his actions. He understands the gravity of this case. He understands what the possible punishment could be if convicted. He understands the seriousness of the offense. He's clearly of sound mind. He's thinking clearly and he has unequivocally expressed to the Court his desire to represent himself.

In addition to the extensive colloquy between the trial court and Defendant at that hearing, Defendant also signed a written waiver of counsel on the same date.

The quoted colloquy establishes that, during the hearing, the court advised Defendant of his right to continue with Gerrans as his appointed attorney or to represent himself and have Gerrans act as standby counsel, satisfying subsection (1) of our State's waiver of counsel statute. The court further explained the role and limits of standby counsel and emphasized that final decisions during trial would be Defendant's responsibility. The court had also previously suggested strongly that Defendant *not* proceed *pro se*, explaining that Gerrans was an experienced criminal defense attorney who would represent Defendant ably. These exchanges ensured that Defendant understood the consequences of his decision as required by subsec-

**IN RE RONE v. WINSTON-SALEM/FORSYTH CNTY. BD. OF EDUC.**

[220 N.C. App. 401 (2012)]

tion (2). In addition, the court informed Defendant that he faced a charge of first-degree murder, which would result in a sentence of life in prison if Defendant was convicted, satisfying subsection (3). Thus, the court fully complied with the requirements of section 15A-1242. Accordingly, this assignment of error is overruled.

NO ERROR.

Judges MCGEE and HUNTER, JR., ROBERT N., concur.