IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-852

Filed 18 July 2023

Mecklenburg County, No. 20 CRS 100389

STATE OF NORTH CAROLINA

v.

DARVIN MAX HOLLIDAY

Appeal by defendant from judgment entered 6 May 2022 by Judge Jacqueline D. Grant in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 April 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Matthew Baptiste Holloway, for the State.*

*Ryan Legal Services, PLLC, by John E. Ryan, III, for defendant-appellant.*

ZACHARY, Judge.

Defendant Darvin Max Holliday appeals from a judgment entered upon a jury's verdict finding him guilty of trafficking in fentanyl by possession. On appeal, Defendant argues that the trial court erred by failing to instruct defense counsel to call an out-of-state witness where Defendant and his attorney had reached an "absolute impasse" regarding the issue. After careful review, we conclude that Defendant received a fair trial, free from error.

## ***Background***

At approximately 4:00 a.m. on 6 December 2020, Officer Ian Casey of the

Cornelius Police Department observed Defendant and Allie Meadows parked at the Microtel Hotel in Cornelius, North Carolina. As Defendant and Meadows exited the car and walked toward the hotel, Officer Casey approached and asked whether the car in the hotel parking lot belonged to them. Defendant stated that he owned the vehicle, but after determining that the vehicle's license plate did not match its registration, Officer Casey detained the couple. While talking with Defendant and checking his identification, Officer Casey observed a red tube in the driver's side door compartment, which Defendant claimed contained "nothing[.]" Officer Casey asked to search the vehicle and Defendant consented, providing Officer Casey with the keys to the locked car.

During the vehicle search, Officer Casey discovered three small packages inside of the red tube, which he suspected contained illegal drugs. Officer Casey arrested Defendant but permitted Meadows to leave in the car. The packages were later determined to contain various illicit substances, including methamphetamine and fentanyl.

On 3 May 2022, this matter came on for trial in Mecklenburg County Superior Court.[1] Just prior to jury selection, Defendant asked to address the court regarding his dissatisfaction with his appointed counsel:

---

[1] Defendant initially faced multiple charges arising from the events of 6 December 2020. On the morning of trial, however, the State announced its decision to dismiss three of Defendant's pending charges and to proceed solely on the superseding indictment in 20 CRS 100389, charging Defendant with trafficking in fentanyl by possession of more than four but less than 14 grams.

> [DEFENDANT]: I think that I might have been a little bit misrepresented here because I didn't know that you could subpoena the girl that was with me[, Meadows,] that it was her heroin, and I didn't know, so she's not here today.
>
> THE COURT: Okay. All right. And is that -- are you wanting her to testify?
>
> [DEFENDANT]: Well, she should be here because it was hers. It was in my vehicle, but it was her heroin. And she was with me that night, but they let her drive off. She didn't have her drivers license or nothing, but they let her drive off in [the] vehicle, which my plates were on the vehicle, but it wasn't my vehicle.

The trial court then asked to hear from defense counsel, Michael Kolb. Mr. Kolb acknowledged that, at some point during the case's pendency, he and Defendant had discussed "[w]hether or not it would be a good idea to subpoena" Meadows, but Mr. Kolb determined that she "would not be a good witness" for Defendant. According to Mr. Kolb, the issue was not broached again until trial, when Defendant informed Mr. Kolb "that he wished for [Meadows] to be . . . subpoenaed on it, though that was not [Mr. Kolb's] understanding that he was insisting on it." Mr. Kolb further explained: "[F]or reasons of trial strategy, I have not done that, but [Defendant] does not agree with that today."

Defendant explained that Meadows told him that she was willing to testify that the drugs were hers, but that he had not spoken with her in a month and was not sure that she would answer his call. Defendant was also unsure that Meadows would voluntarily travel from her home in West Virginia to testify in court in Charlotte

"because she did get in some trouble for some heroin again." In addition, Defendant conceded that the last time he was in court, at the 28 March 2022 calendar call, he had not discussed with Mr. Kolb the issue of whether Meadows would testify.

The State noted that Defendant had also neglected to raise, at any time prior to trial, Defendant's apparent dissatisfaction with counsel, or Mr. Kolb's failure to subpoena Meadows.

The trial court informed Defendant that Mr. Kolb did not have the power to subpoena a witness from outside the state. The court then attempted to clarify Defendant's desired remedy, inquiring whether he sought to replace Mr. Kolb as his attorney:

> THE COURT: And understanding that you just spoke with your attorney, and if you need to speak with him further about the willingness to reach out to [Meadows] to see if she's voluntarily willing to come down, *are you then comfortable proceeding with Mr. Kolb as your attorney?* I can't tell exactly what you're asking me because it's sort of one of these, here's what I wanted him to do, but he hasn't done.
>
> [DEFENDANT]: Right.
>
> THE COURT: But it may be a little bit of misunderstanding of what his powers were to begin with, and so that's why *I'm trying to get -- seek clarification of exactly what you're asking me.*
>
> . . . .
>
> THE COURT: . . . I was trying to figure out when you were talking about -- you started off by saying this female that you wanted to be called as a witness and you were -- you

had wanted her to be subpoenaed and she wasn't and that's why I just wanted to make you aware because it sounds like that's what you were upset about.

MR. KOLB: And, Your Honor, she can be voluntarily asked to be here, but again, we still have the problem of I don't really want her, but he does.

THE COURT: Correct. And that I will let y'all discuss privately, but understanding that we can't compel her to come here --

[DEFENDANT]: I do understand that. Yes, I do.

THE COURT: -- is that *are you comfortable then allowing Mr. Kolb to continue representing you?* You guys can discuss whether or not it's a good idea to ask her to come down here since she has those other charges against her, and your attorney can explain to you how one's credibility if they take the witness stand can be impeached. And so *are you okay with Mr. Kolb -- are you still wanting Mr. Kolb to represent you in this matter?* And then you guys can discuss, you know, whether or not you want to reach out to her to see if she would voluntarily come or not.

[DEFENDANT]: *No, ma'am, I would exactly maybe like to get a hold of another attorney* or, you know, I've got a friend that would probably represent me . . . I would rather, you know, get another attorney to represent me because he has misrepresented me, you know, I think that he has.

(Emphases added).

The trial court again asked whether Defendant was moving to substitute counsel, and Mr. Kolb explained the extent to which Defendant had mentioned his desire to retain new counsel:

THE COURT: Okay. And so are you seeking to retain your own counsel?

[DEFENDANT]: Yes, ma'am.

. . . .

MR. KOLB: Just to let you know, while he has not been -- Mr. Holliday has always been extremely polite to me and everyone he's been around, there's not any bad blood up here at all. He has told me a few times that he has spoken -- when I say a few times, this week and earlier, that he has spoken to other attorneys about his case, which I prefer he not, because that throws --

THE COURT: Correct.

MR. KOLB: -- off some other things. But he hasn't hired them, but I will tell you he has not shown up today with -- first time I've ever heard that he might be hiring somebody and that is only really come up since the previous calendar call, which April --

[DEFENDANT]: Yes, sir.

MR. KOLB: Early April, whatever the last calendar call was, that's when he first brought it up. He hasn't hired anybody. He did talk about that he might do that, he's thinking about it, so I will let the Court know while he hasn't hired anyone, I've not ever heard from anyone. It was brought up before today but only at that last time.

(Emphases added).

In opposing Defendant's motion, the State expressed concerns that Defendant had "not gone the extra step to hire his own counsel," and argued that "coming in on the day of trial to ask for new counsel and argue about trial strategy amount[ed] to nothing more than a delay tactic[.]" The trial court requested that Defendant provide the contact information of the attorneys with whom he had communicated concerning representation. After speaking with those attorneys, the court confirmed Defendant's

basis for seeking to substitute counsel:

> THE COURT: . . . [W]hat you've indicated or what I've heard from you about why you were seeking to replace Mr. Kolb and substitute in and retain counsel was really a difference -- a disagreement about trial strategy, this one particular witness that you wanted -- you wanted her to be called as a witness, and Mr. Kolb does not believe that is a good idea.
>
> [DEFENDANT]: Yes, ma'am.
>
> THE COURT: I did not hear any other reason for which you were seeking to substitute counsel for Mr. Kolb. It sounds like he's communicated with you, you've discussed your case, may not necessarily agree over complete trial strategy, but he's communicated with you, you've been here for your --
>
> [DEFENDANT]: Oh, yeah, he's been a great lawyer, but, like I said, we just -- I just disagreed with a couple things myself. It wasn't that he was a bad attorney. It was just -- I just thought I was misled, you know, because of the court --

The trial court then denied Defendant's "motion to substitute counsel":

> THE COURT: . . . [Y]ou haven't actually retained them, and so the Court is concerned that to just allow this -- this case has been pending for over two years, that that would just [obstruct] and delay justice in this case for the proceedings going forward.
>
> So the Court is going to -- unless Mr. Kolb has any additional arguments he wishes to make, the Court is going to deny . . . [D]efendant's motion to substitute counsel. And the Court finds that in this case that Mr. Kolb is an experienced attorney, he appears to be competent, and the dissatisfaction in this case by [Defendant] was really over trial tactics and specifically calling a -- one witness who resides in West Virginia as a witness in this case. And that being the nature of the disagreement, the Court does not

find that nature, a disagreement over trial tactics, renders Mr. Kolb to be incompetent or ineffective to represent . . . [D]efendant. Likewise, . . . [D]efendant has had several months since this case has first been placed on the trial calendar to retain private counsel, including and most recently, the March 28, 2022, trial calendar date where . . . [D]efendant has had an opportunity to retain private counsel and that while there may have been some phone calls to different attorneys, no attorney was specifically retained and had been paid whatever they would require as a retainer fee to represent [Defendant].

So based on all of that, the Court finds that there is no legal basis or reason to replace Mr. Kolb, and for those reasons, the Court is denying [Defendant]'s motion or what will be treated as a motion to substitute counsel.

The trial proceeded as scheduled, and on 6 May 2022, the jury returned its verdict finding Defendant guilty of trafficking in fentanyl by possession. The trial court entered judgment upon the jury's verdict, sentencing Defendant to an active term of 70 to 93 months in the custody of the North Carolina Division of Adult Correction. Defendant gave oral notice of appeal in open court.

## *Discussion*

On appeal, Defendant argues that "the trial court erred by failing to instruct [Mr.] Kolb to call Meadows as a witness when it was clear that [Mr.] Kolb and [Defendant] had reached an absolute impasse." Specifically, Defendant asserts that the trial court's failure "to either appoint substitute counsel or to instruct trial counsel on the impasse between the client and his attorney violated the constitution." We disagree.

A criminal defendant's right to counsel is enshrined in the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; *State v. Ali*, 329 N.C. 394, 403, 407 S.E.2d 183, 189 (1991).

Of course, the Sixth Amendment's protections notwithstanding, "[n]o person can be *compelled* to take the advice of his attorney." *Ali*, 329 N.C. at 403, 407 S.E.2d at 189 (emphasis added) (citation and internal quotation marks omitted). Indeed, "[t]he attorney-client relationship rests on principles of agency, and not guardian and ward." *Id.* (citation omitted).

At trial, "tactical decisions—such as which witnesses to call, which motions to make, and how to conduct cross-examination—normally lie within the attorney's province." *State v. Brown*, 339 N.C. 426, 434, 451 S.E.2d 181, 187 (1994), *cert. denied*, 516 U.S. 825, 133 L. Ed. 2d 46 (1995). "However, when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control . . . ." *Ali*, 329 N.C. at 404, 407 S.E.2d at 189. This is the "absolute impasse" rule.

In *Ali*, our Supreme Court instructed that "[i]n such situations, . . . defense counsel should make a record of the circumstances, her advice to the defendant, the reasons for the advice, the defendant's decision and the conclusion reached." *Id.*

Where the trial court is aware that the defendant and counsel have reached an absolute impasse on a tactical matter, it is reversible error for the court to allow the attorney's decision to prevail over the defendant's wishes. *State v. Freeman*, 202 N.C.

- 9 -

App. 740, 746, 690 S.E.2d 17, 22 (2010), *disc. review improvidently allowed*, 365 N.C. 4, 705 S.E.2d 734 (2011) (per curiam); *see id.* at 746–47, 690 S.E.2d at 22 ("The denial of [the] defendant's *Ali* right to make tactical decisions regarding the use of peremptory challenges is analogous to the erroneous denial of a peremptory challenge. The right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused . . . . Defendant is entitled to a new trial." (citation and internal quotation marks omitted)).

Significantly, however, not all tactical disagreements between a defendant and his or her attorney rise to the level of "absolute impasse." First and foremost, a defendant cannot compel his attorney to violate the law. *See Ali*, 329 N.C. at 403, 407 S.E.2d at 189 (providing that an "attorney is bound to comply with her client's *lawful* instructions" (emphasis added)); *State v. Williams*, 191 N.C. App. 96, 105, 662 S.E.2d 397, 403 (2008) (concluding that defense counsel "could not have lawfully complied with [the d]efendant's requests" where he "essentially concede[d] racially discriminatory intent in his recommendations . . . regarding the exercise of peremptory challenges"), *appeal dismissed and disc. review denied*, ___ N.C. ___, 684 S.E.2d 158 (2009).

And "[n]othing in *Ali* or our Sixth Amendment jurisprudence requires an attorney to comply with a client's request to assert frivolous or unsupported claims. In fact, to do so would be a violation of an attorney's professional ethics[.]" *State v. Jones*, 220 N.C. App. 392, 395, 725 S.E.2d 415, 417, *disc. review denied*, 366 N.C. 389,

732 S.E.2d 474 (2012).

Furthermore, no actual impasse exists, and *Ali* does not apply, when the record fails to disclose any disagreement between the defendant and counsel with respect to *trial tactics. See, e.g., State v. McCarver*, 341 N.C. 364, 385, 462 S.E.2d 25, 36 (1995) ("[W]e find no indication in the record of 'an absolute impasse' between the client and the defense team as it concerned trial tactics. At no time did [the] defendant voice any complaints to the trial court as to the tactics of his defense team."), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996); *Williams*, 191 N.C. App. at 104, 662 S.E.2d at 402 ("[E]ven though the foregoing evidence undoubtedly demonstrates an absolute impasse between [the d]efendant and defense counsel as concerned the necessity . . . that [the d]efendant stand trial at all, the evidence does not demonstrate an impasse *as it concerned trial tactics*." (citation and internal quotation marks omitted)).

In the instant case, Defendant asserts that the trial court erred by failing to instruct Mr. Kolb to subpoena Meadows where Defendant and Mr. Kolb had reached an "absolute impasse" regarding whether to call Meadows to testify. According to Defendant, Mr. Kolb's "unwillingness" to do so, as evinced by Mr. Kolb's decision not to "timely move[ ] the court for a certificate and order of attendance" for Meadows, together with the trial court's "failure to properly instruct" Mr. Kolb, "deprive[d Defendant] of his right to control his own defense." We disagree.

Preliminarily, we note that the parties agree that Mr. Kolb did not have the authority to subpoena Meadows, an out-of-state witness. It is also evident that while,

- 11 -

in theory, Meadows's presence may have been secured pursuant to the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings ("the Act"), N.C. Gen. Stat. § 15A-811 *et seq.* (2021), the trial court was not *obligated* to instruct Mr. Kolb to commence proceedings pursuant to the Act, particularly given the untimeliness of Defendant's complaint. *See State v. Cyrus*, 60 N.C. App. 774, 776, 300 S.E.2d 58, 59 (1983) (reasoning that while "the officers and the court have a duty to see that [a] defendant has an opportunity for securing material witnesses" under the Act, "[t]hey are placed under no burden to demand that [the defendant] do so").

Here, the record reflects that although Defendant and Mr. Kolb had previously discussed whether to call Meadows as a witness, Mr. Kolb did not understand that Defendant was *insisting* on Meadows's presence until the first day of trial, when Defendant raised the issue prior to voir dire. By that point, Defendant's case had been pending for over two years. We therefore conclude that Defendant failed to timely notify the trial court—as well as the State and his own attorney—that he wished to seek to compel Meadows's attendance at trial via the procedures set forth by the Act. *See id.* ("It is . . . true that the right to compulsory process is a fundamental right and that neither our statute nor the Constitution prescribes time limits within which to exercise that right. It is equally true, however, that rights can be waived.").

Moreover, contrary to Defendant's argument on appeal, Mr. Kolb's failure to "timely move[ ] the court for a certificate and order of attendance" does not demonstrate the existence of an absolute impasse between Defendant and counsel.

Rather, Defendant merely presents a disagreement with his appointed attorney over trial tactics, one that counsel believed had been resolved well before trial.

As Mr. Kolb explained to the trial court, he had previously determined that Meadows "would not be a good witness for" Defendant's case, due to "reasons of trial strategy"—including the fact that Meadows "would be subject to impeachment on cross-examination." Nonetheless, upon learning of Defendant's concerns, Mr. Kolb agreed to discuss the matter further with Defendant, despite the attorney's misgivings as to whether Meadows's appearance would be in Defendant's best interest. This does not indicate a deadlock. *Cf. Williams*, 191 N.C. App. at 103, 662 S.E.2d at 402 ("[The d]efendant certainly disagreed with defense counsel's advice regarding the jury selection, but specific disagreement did not rise to the level of an absolute impasse because [he] ultimately deferred the decision to defense counsel.").

And although Defendant argues that "[d]iametric opposition like that depicted in the record between Mr. Kolb and [Defendant] cannot be construed as anything but an absolute impasse[,]" he ultimately "makes no argument rooted in law that an impasse existed, besides using conclusory terms." *State v. Curry*, 256 N.C. App. 86, 98, 805 S.E.2d 552, 559 (2017).

Consequently, Defendant has failed to demonstrate the existence of an absolute impasse. We therefore conclude that the trial court did not err by failing to instruct Mr. Kolb to call Meadows as a witness.

Finally, we briefly respond to these arguments in the context of Defendant's

motion to substitute counsel. As Defendant acknowledges on appeal, in arguing before the trial court, he "was unable to clearly vocalize the true issue," which he now articulates as the "absolute impasse" issue of which we have already disposed. However, at trial, Defendant characterized the relief he sought as substitution of counsel, stating that "I would exactly maybe like to get a hold of another attorney or, you know, I've got a friend that would probably represent me . . . I would rather, you know, get another attorney to represent me because [Mr. Kolb] has misrepresented me[.]" Regardless of its characterization, Defendant's argument lacks merit.

A "trial court is constitutionally required to appoint substitute counsel whenever representation by counsel originally appointed would amount to denial of [the] defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded [the] defendant his constitutional right to counsel." *State v. Thacker*, 301 N.C. 348, 352, 271 S.E.2d 252, 255 (1980). "[A] disagreement over trial tactics generally does not render the assistance of the original counsel ineffective." *Id.*; *see also State v. Gary*, 348 N.C. 510, 514, 501 S.E.2d 57, 61 (1998) (concluding that the trial court properly denied the defendant's motion to substitute counsel where the defendant's claim of ineffective assistance of counsel arose out of his attorney's decision "not to subpoena certain witnesses whom [the] defendant claimed would have provided alibi testimony").

Here, after explaining that Meadows could not be subpoenaed, the trial court repeatedly sought clarification from Defendant that substitute counsel was the

remedy he desired. Defendant responded affirmatively in each instance. Defendant then provided the trial court with contact information for several attorneys from whom he had purportedly sought representation; but after the first attorney failed to immediately recognize Defendant and declined to represent him, the trial court determined that it would not "delay this trial again" and denied Defendant's motion to substitute counsel. Defendant did not revisit the issue of Meadows's attendance, but rather proceeded to trial with Mr. Kolb as his attorney.

To the extent that Defendant now challenges the trial court's denial of his motion to substitute counsel, he offers no distinct reason or supporting argument in his brief, beyond those we have already addressed and soundly rejected. Accordingly, this issue is abandoned. *See* N.C.R. App. P. 28(b)(6); *see also, e.g.*, *State v. Ambriz*, 286 N.C. App. 273, 292, 880 S.E.2d 449, 466 (2022) (declining to address the defendant's bald contention that certain of the trial court's findings were "incomplete, unsupported, or incorrect[,]" and concluding that because he "made no substantive argument regarding th[o]se findings, he . . . waived any challenge" on appeal).

### *Conclusion*

For the foregoing reasons, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judges GORE and GRIFFIN concur.